(No. 41705.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
EDWARD RICHARD CESARZ, Appellant.

*Opinion filed Dec. 19, 1969.—Rehearing denied Jan. 26, 1970.*

Schaefer, J., dissenting.

Homer B. Harris, Jr., of Lincoln, appointed by the court, for appellant.

182

WILLIAM J. SCOTT, Attorney General, of Springfield, and GARY L. HINMAN, State's Attorney, of Lincoln, (FRED G. LEACH, Assistant Attorney General, and EVERETT B. JOHNSON, Assistant State's Attorney, of counsel, ) for the People.

PER CURIAM : The defendant, Edward Richard Cesarz, was tried by jury in the circuit court of Logan County, resulting in a verdict finding the defendant guilty and recommending punishment at death. The trial judge sentenced the defendant to a term of not less than 70 nor more than 90 years in the penitentiary and the defendant has appealed directly to this court. Constitutional questions give us jurisdiction.

The defendant's first claim is based upon *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. The prospective jurors were all questioned as to whether they had religious or conscientious scruples against the death penalty. In some instances further inquiry was made but many jurors were excused simply on the basis of an affirmative answer to the question concerning their scruples. Defendant argues that this procedure resulted in the impanelling of a jury which did not represent the conscience of the community and contends that his conviction must be set aside. We do not agree. The same claim was made in *Witherspoon* and the United States Supreme Court noted that the data in that case was too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. In footnote 21 to the *Witherspoon* decision the court said, "Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case." (Emphasis in original.) In this case the trial judge, after studying the *Witherspoon* decision, decided that the death sentence would probably not

be permitted to stand and therefore sentenced the defendant to imprisonment. As in *Witherspoon* there is insufficient data here upon which to conclude that a jury impanelled in violation of *Witherspoon* standards is an unfair jury on the issue of guilt. We therefore hold that the alleged improper exclusion of jurors with religious or conscientious scruples against the death sentence does not require reversal of the judgment of conviction.

The defendant's next contention is that a pretrial identification proceeding was conducted in violation of the defendant's constitutional rights and that the in-court identification testimony was improperly admitted. Consideration of this question requires a brief statement of the evidence. The deceased was employed as the registration clerk at the Holiday Inn in Lincoln, Illinois. In response to a telephone call the police arrived at the motel at about 3:30 A.M. where they found the deceased in a dazed condition standing behind the counter. Medical testimony later established that she had been shot three times and she died as a result of the gunshot wounds. One Robert Moll, an off-duty motel employee, was near the registration desk at about 2:30 A.M. and observed a man registering as a motel guest. The night janitor at the motel, Andrew Bentz, testified that at about 3:15 A.M., a man asked him for some help in opening a window in his room. Bentz and this man proceeded to the room where the man struck Bentz in the back of the neck. Bentz testified that the man had a gun and indicated that he planned to take money from the motel office. The man then directed Bentz to leave the motel and walk toward an adjoining field, count to 1,000, and not turn around before that. The murder victim lived for a short time after being shot and both she and Moll were able to provide the police with a description from which a composite picture was made. The next day, in response to information received from the Holiday Inn in Bloomington, Illinois, that a person resembling the composite picture was registered there,

the police took Moll to the Bloomington motel. They sat in the dining room overlooking the swimming pool and the police officers asked Moll to look around and see if he saw anyone who looked familiar. He was aware at that time that the police had a suspect. Moll testified that there were about 50 or 60 people in and around the pool and he picked out the defendant who was wearing red swimming trunks and sun glasses. The police asked the defendant to come inside where Moll observed him more closely and identified him as the man who had registered at the Lincoln motel.

At the time of the courtroom identification defense counsel tried to establish that the police officers had pointed out the defendant to him but he denied this and insisted that they only asked him to look around at all of the people and see if he saw anyone who looked familiar. The identification at the Bloomington motel occurred after the decision of the United States Supreme Court in *Gilbert* v. *California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and defendant argues that the identification was invalid as a matter of law because defendant was without counsel at the time of the identification. As we pointed out in *People* v. *Palmer*, 41 Ill.2d 571, the *Gilbert* decision applies only to post-indictment confrontations and the rule requiring automatic exclusion because of the absence of counsel is not applicable here. It would be strange indeed to require counsel in a case such as this where defendant had not been placed under arrest and was unaware that he was being observed. Nor does the doctrine of *Stovall* v. *Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, require exclusion of the in-court identification. Exclusion under that case is required only where the pretrial confrontation is so fundamentally unfair that the defendant was denied due process of law. A fairer identification procedure can hardly be imagined. According to the testimony of the witness that he was not coached by the police and that he picked the defendant out of a group of 50 or 60 people, in spite of the fact that de-

fendant was in swimming attire rather than fully clothed as he was at the time of the registration, we are of the opinion that the court did not err in permitting the courtroom identification testimony.

Defendant also argues that the witness, Andrew Bentz, should not have been permitted to make a courtroom identification of the defendant without first determining that the identification had an independent source unconnected with an alleged pretrial identification. There is no showing that there was any pretrial identification proceeding involving Bentz. He admitted being in the Logan County jail where he made a written statement to the police but there is no showing that the defendant was in the jail at that time and no showing that any identification procedure was undertaken at that time. Bentz had an adequate opportunity to observe the defendant and identify him as the man who had induced him to come to the room and who had struck him on the neck and who had said that he intended to rob the motel. There was no error in admitting the identification testimony of this witness.

A further claim based upon constitutional grounds is that the court erred in denying a motion for a change of place of trial from Logan County on the ground of prejudicial publicity. The defendant filed a motion incorporating as exhibits certain newspaper and magazine articles and affidavits. The court denied the motion without conducting an evidentiary hearing. Defendant first contends that where such a motion is filed, section 114—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 114—6) requires that the court shall conduct a hearing. Defendant argues that where the State introduces no evidence opposed to the motion the court must accept the allegations of prejudice and must grant the change. A "hearing" does not necessarily imply that evidence must be heard. It is common knowledge that many motions are decided without hearing evidence and it is common legal parlance to speak

of the "hearing" on such motions. In our opinion the fact that the court did not conduct an evidentiary hearing does not require a holding that the change of place of trial should have been granted. In denying the motion the court stated that he would reconsider if it developed that it was impossible to obtain a fair jury. During the course of the *voir dire* examinations many jurors stated that they had read newspaper and magazine articles of the crime and had formed an opinion concerning the defendant's guilt or innocence. These persons were excused for cause. The 12 jurors who were ultimately selected stated that they had no preconceived notions of guilt or innocence and could be fair and impartial. In *People* v. *Speck,* 41 Ill.2d 177, we stated that the basic consideration is not the amount of publicity in a particular case, but whether the defendant in the case received a fair and impartial trial. In that case we relied in part on *Beck* v. *Washington,* 369 U.S. 541, 8 L. Ed. 2d 98, 82 S. Ct. 955, where the court said that there is no constitutional infirmity if a defendant actually receives a trial by an impartial jury. This case, like *Speck* and others in which it has been held that a motion for a change of venue was properly denied, differs from cases such as *Irvin* v. *Dowd,* 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639, where it was held that defendant did not receive an impartial trial. In *Dowd,* 8 of the 12 jurors finally selected stated that they had an opinion as to the defendant's guilt, whereas in the present case, none of the jurors who actually served on the trial jury had any such opinion. We are of the opinion that the trial court correctly denied the motion for a change in the place of defendant's trial.

The defendant's next argument is that the court should have allowed defendant's motion to sequester the jury. It was formerly the rule in a capital case that a defendant had an absolute right to have the jury sequestered. (*People* v. *Konkowski,* 378 Ill. 616, 622.) Under the Code of Criminal Procedure it is now the rule that the jury shall be permitted

to separate in all cases until the final submission of the cause, except that no such separation shall be permitted after the court finds a probability that prejudice will result from such separation. (Ill. Rev. Stat. 1967, ch. 38, par. 115—4(m).) The judge made no such finding here and any contention that separation of the jury operated to prejudice the defendant is based entirely upon conjecture. The jury was repeatedly admonished not to discuss the case, read newspaper accounts or listen to news of the case. Defendant contends, however, that the statute referred to is invalid because it is vague and indefinite and lacks sufficient standards. The decisions of this court have on many occasions discussed the question of prejudice and the possibility of prejudice to a defendant in the course of a criminal trial, and this background of case law affords a sufficient standard for determining whether sequestration should be allowed. As a further part of the same argument, the defendant contends that the section is invalid because it deprives the defendant of an impartial determination of the right of sequestration where the court has already made a ruling denying a motion for a change in the place of trial. We cannot accept defendant's argument. The motion for a change in the place of trial is based upon the ground that prejudice exists, generally as the result of pretrial publicity. A finding that such prejudice does not exist does not necessarily preclude the trial court from finding that the jury should be sequestered. The present case affords a good example of the distinction. Defendant moved several times during the trial for sequestration of the jury and the court denied his motion. However, at the close of the testimony on the next to the last day the court ordered sequestration, possibly on the basis of an incident which will be discussed hereafter in this opinion. It is apparent that the trial judge did not feel that he was bound by a ruling on the pretrial motion since he felt free to grant the motion for sequestration when he felt that there might be a possibility of prejudice.

It is our opinion that the statute is valid and that the court did not err in denying the motion to keep the jury together.

The defendant exhausted all of his peremptory challenges and contends on appeal that the court should have allowed his challenges for cause against 3 jurors. One of these was employed as a nurse's aide at the hospital and was working at the hospital when the deceased was brought in. She was also a friend of the family of the deceased and talked to the family at the hospital and attended the visitation at the funeral home. This juror testified that her friendship with the family would not interfere with her impartiality. In response to a question as to whether she was in the frame of mind which she would like to have a juror be in if she were on trial, she replied that she thought that a person in that frame of mind would do a fair job. Defendant excused her by peremptory challenge. In view of the statements of the prospective juror the court did not err in denying the challenge for cause. The second prospective juror involved in this phase of the defendant's argument admitted reading a somewhat spectacular account of the crime in a magazine. The juror said that he could base his verdict solely upon the testimony and could be fair and impartial. He testified that he did not remember the details of the magazine articles and that he read only about half of the article and then laid it down and never resumed reading it. He also was excused peremptorily. The fact that the juror had read a portion of the article was an insufficient basis for the challenge for cause in view of his positive statements of impartiality. The third juror involved was a clergyman, who was the pastor of the church to which one of the testifying police officers belonged. He said that based on his acquaintance with the officer he had the feeling that the officer's testimony would be factual and truthful. When questioned by the court he said that he could subject the testimony of the officer to the same tests as anyone else as to credibility. The court posed an example to the juror

in which he stated that if he were a prospective juror and someone asked him if he believed that his court reporter was truthful he would reply that he did so believe, but that this did not mean that he believed the testimony of the reporter would be infallible. The prospective juror stated that he believed that his friend, the police officer, was human and could be mistaken. This juror remained on the panel, defendant's peremptory challenges having been exhausted. We do not believe that the court was required to sustain defendant's challenge for cause as to this juror.

It is also argued that the indictment was fatally defective. Omitting formal language, the indictment charged that the defendant intentionally and knowingly, without lawful justification, shot the deceased and that she languished a short time and died. The act was alleged to be in violation of section 9—1 of the Criminal Code. (Ill. Rev. Stat. 1967, ch. 38, par. 9—1.) Defendant claims that this indictment fails to allege the intent specified in that section.

The indictment charged that the shooting was done intentionally and knowingly and without lawful justification and specifies the statutory section. In our opinion the indictment was sufficient to allege the criminal intent.

A further contention relates to the instructions given the jury. There was no instruction tendered or given specifically advising the jury that the burden was on the State to establish defendant's guilt beyond a reasonable doubt. We could properly refuse to consider this contention on the ground that defendant waived the giving of such an instruction by his failure to request it. However, in view of the seriousness of the offense and the severity of the sentence, we consider the claim. In the recently adopted Illinois Pattern Jury Instructions for criminal cases, the committee states that a commitment to presumed innocence which can be overcome only by proof beyond a reasonable doubt is the touchstone of American criminal jurisprudence and that an instruction to that effect must be given in all cases. (IPI—

Criminal, sec. 2.03, committee note.) The court gave the following instruction: "The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty."

This is a verbatim copy of the first paragraph of the instruction suggested by section 2.03. The second paragraph of the instruction recommended in section 2.03 is as follows: "The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

This instruction was not given. While it would have been preferable to give that portion of the recommended instruction, we do not believe that it was reversible error to fail to give it. The committee note refers to the presumption of innocence which can be overcome only by proof beyond a reasonable doubt. This legal premise was set forth in the instruction as given and we believe that the jury was adequately instructed. The other objections to instructions deal with an instruction defining the crime of murder and an instruction as to the charge in the indictment, both of which were given at the request of the State. The instruction as to the indictment paraphrased the language of the indictment, while the instruction defining the crime paraphrased the language of the statute. Defendant claims that since the indictment did not allege the requisite intent the two instructions were confusing and misleading. What we have said with respect to the indictment is sufficient to dispose of this contention. It was not error to instruct the jury as to elements of the crime as defined by statute, nor to tell the jury the charge set forth in the indictment.

The defendant testified on his own behalf and denied

committing the murder and implicated one Ronald Trunninger as the murderer. It was following this testimony that the court ordered the sequestration of the jury. Trunninger was confined in the State penitentiary and was returned to court on a writ of *habeas corpus* to testify in rebuttal on behalf of the State. Before Trunninger testified the court directed that the transcript of defendant's testimony implicating him be read. After that portion of the transcript was read the court appointed counsel for Trunninger and after conferring with counsel he testified for the State. He denied committing the crime and stated that the last time he had seen the defendant was in Bloomington several nights prior to the crime. When asked whether he was with the defendant on the night of the crime at the Lincoln Holiday Inn, he replied, "Not that I know of." Defendant claims that the court should not have read the transcript of his testimony to Trunninger. A motion for the exclusion of witnesses had previously been allowed and defendant claims that this gave Trunninger, a State's witness, the unfair advantage of hearing the prior testimony, whereas other witnesses who had been excluded had not received such an advantage. The exclusion rule does not bar the testimony of this witness. Apparently the State was unaware of the fact that the defendant would implicate Trunninger until the defendant testified and was therefore unaware that he would be a rebuttal witness. Even if he had not been confined in the penitentiary and had been present in the court room while the defendant testified, the court would not have erred under those circumstances in permitting him to testify in rebuttal. The defendant had accused Trunninger of a capital crime and the trial judge correctly decided that the witness should be thoroughly advised of this charge and of his constitutional right to remain silent before being called as a witness. The court did not err in the procedure that was followed.

Finally, the defendant alleges that the evidence was insufficient to establish his guilt. A portion of this argument

is based upon the alleged improper identification procedure which we have already held to be free from infirmity. The testimony of Moll and Bentz established the presence of the defendant in the motel shortly before the killing and the testimony of Bentz, if believed by the jury, established defendant's intent to commit an armed robbery. When the defendant's Bloomington motel room was searched, a .22 caliber gun and some shells were found. A ballistics expert was unable to say positively that the bullets which killed the deceased were fired from that gun. The deceased was apparently the only eyewitness and defendant argues that the failure by the State to introduce testimony that the deceased had told the policeman who had shot her is indicative that she did not identify him. Had such testimony been offered defendant doubtless would have contended that it was inadmissible as hearsay, and the fact that the State did not elect to risk its case by claiming that such a statement was admissible as a dying declaration affords no comfort to defendant. The evidence was circumstantial but was sufficient to establish defendant's guilt beyond a reasonable doubt.

The judgment of the circuit court of Logan County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

I cannot agree with the opinion of the court insofar as it holds that it was not reversible error to deny the defendant's challenges for cause to three prospective jurors, or to fail to instruct the jury that the prosecution had the burden of proving the defendant guilty beyond a reasonable doubt.

The first juror had known the family of the deceased for 20 years, had visited in their home, had talked to them at the hospital, and had attended the visitation at the funeral home. Their children were good friends. The majority holds that the defendant's challenge for cause was properly

rejected because she stated that she felt that a person in her frame of mind could do a fair job.

The third juror was the pastor of the church to which one of the testifying police officers belonged. The officer was on the church board, and the pastor stated that because he knew the officer personally he would probably attach greater credibility to his testimony. Although he stated, as the majority points out, that he believed that the officer was human and not infallible, and so could be mistaken, he made this statement in response to a hypothetical question from the trial judge as to whether he would believe the officer if the testimony of six other witnesses conflicted with that of the officer. But the question is not, as the trial judge phrased it, whether it is 'beyond the imagination" that someone could be mistaken, or whether a prospective witness is "human" and so might be mistaken, or even whether he would be believed if six other witnesses contradicted his testimony. The question is whether the juror could subject the testimony of that witness to the same tests of credibility that he would apply to every other witness.

In response to a challenge for cause addressed to the second prospective juror, who had read part of a sensational account of the case in a police magazine, the trial judge said: "I find it somewhat difficult, too, but I can't see into the minds of everyone and perhaps there are people intelligent enough to discount this and so forth. I opened the door for him as wide as I possibly could to give him an opportunity to disqualify himself and if in fact his answers are true, that he is not prejudiced, etcetera, etcetera, I can hardly discharge jurors on the basis of what I think they may be thinking so I will deny your motion." With respect, I submit that this is exactly what the trial judge must do.

A prospective juror's statement of his own subjective frame of mind cannot be permitted to determine whether he can be impartial. As the Supreme Court said in *Irvin* v.

*Dowd*: "No doubt each juror was sincere when he said that he would be fair and impartial to petitioner. But the psychological impact requiring such a declaration before one's fellows is often its father." (*Irvin* v. *Dowd* (1961), 366 U.S. 717, 728, 6 L. Ed. 2d 751, 759, 81 S. Ct. 1639.) The determination of whether or not a juror can be impartial must be based on human experience which recognizes that influences can operate even though they are not consciously present. (*United States* v. *Wood*, 299 U.S. 123, 145, 81 L. Ed. 78, 88, 57 S. Ct. 177.) This was recognized at common law by the disqualification of certain persons from serving as jurors in a particular case despite their protests that they could be fair. (See *McCarten* v. *Connecticut Co.* (1925), 103 Conn. 537, 131 A. 505.) The responsibility to determine impartiality rests with the trial judge who must exercise his judgment as to whether common knowledge and experience tell him that a juror may not be impartial. (*United States* v. *Chapman* (10th cir. 1946), 158 F.2d 417; *State* v. *Joiner* (1927), 163 La. 609, 112 S. 503; *State* v. *Jackson* (1964), 43 N.J. 148, 203 A. 2d 1.) He cannot, in my opinion, abdicate that responsibility on the ground that "perhaps there may be people intelligent enough to discount" improper influences to which they have been subjected.

As to the burden of proof, I would have thought it beyond question that in a criminal case an instruction must be given that the prosecution has the burden of proving the defendant's guilt beyond a reasonable doubt. Yet the only instruction bearing on the burden of proof stated: "The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty." As the majority points out, this is a verbatim copy of the first paragraph of section 2.03 of the recently adopted Illinois Pattern Jury Instructions for

criminal cases. The second paragraph of that instruction was not given. It states: "The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." The committee note to this instruction says: "The firm commitment to presumed innocence which can be overcome only by proof beyond a reasonable doubt is the touchstone of American criminal jurisprudence. This instruction *must* be given in *all* cases." The majority interprets this note as implying that only the first paragraph of the instruction is crucial, and that the second paragraph, although desirable, is not necessary. I do not agree.

The two rules stated in these paragraphs are complementary. The first states the rule as to the defendant: he is presumed innocent throughout the trial. The second declares that the duty to overcome that presumption rests solely on the State, and that the defendant need not introduce any evidence to support the presumption of innocence. In *People* v. *Weinstein* (1966), 35 Ill.2d 467, in reversing a conviction because of prejudicial statements by the prosecutor during final argument, this court said: "It is a fundamental doctrine of our system of criminal jurisprudence that the law presumes the innocence of an accused until he is proved guilty beyond a reasonable doubt. [Citations.] The presumption is 'founded on the first principles of justice, and in intended, not to protect the guilty, but to prevent, so far as human agencies can, the conviction of an innocent person.' [Citation.] Equally basic is the rule of law that the burden is on the prosecution to prove beyond a reasonable doubt the commission of the crime charged and to establish by the same degree of proof the perpetration of the crime by the person accused; that is to say, the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. [Citations.] The burden of such proof never shifts to the accused, but remains

the responsibility of the prosecution throughout the trial. [Citations.]." 35 Ill.2d at 469-70.

It is conceivable, I suppose, that the basic proposition that the State has the burden of proving the defendant guilty beyond a reasonable doubt can somehow be derived by implication from a statement that the defendant is presumed innocent unless all the evidence in the case convinces the jury otherwise beyond a reasonable doubt. But we have not heretofore thought so, and the draftsmen of the Pattern Jury Instructions did not think so. In my opinion the protection of this right of an accused is too important to be left to conjecture. By its decision in this case the majority has summarily done away with an instruction that has heretofore been thought fundamental in our system of criminal justice. If this instruction can be eliminated in a case in which the defendant is accused of murder, it can certainly be eliminated in every criminal case.

In my opinion the judgment should be reversed and the cause remanded for a new trial.