# Richmond

JOHN PLUMMER STANLEY V. COMMONWEALTH OF VIRGINIA.

January 19, 1970.

Records Nos. 7096, 7097 and 7098.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*James F. Andrews; Sidney Barney (Lavenstein & Lavenstein,* on brief), for plaintiff in error in Record Nos. 7096, 7097 and 7098.

*Richard N. Harris, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error in Record Nos. 7096, 7097 and 7098.

HARRISON, J., delivered the opinion of the court.

John Plummer Stanley, the defendant, was tried and convicted for three armed robberies of employees of the High's Ice Cream Company. The robberies occurred in a store located on South Sycamore Street in Petersburg, Virginia, on December 10th, 13th and 18th,

1967. Trials were had on January 29th, February 5th and February 27th, 1968. The first two were jury trials and in the last, February 27th, a jury was waived. Each trial resulted in a conviction and a sentence of the defendant to confinement in the penitentiary for a term of 20 years. Final judgments were entered by the trial court and to these judgments we granted defendant writs of error.

While the cases are before us on separate records, the issue which is dispositive of all is whether or not the court should have suppressed evidence of an out-of-court identification of defendant on the ground that it was made without the presence of counsel, and of an in-court identification of defendant on the ground that it was tainted by the out-of-court identification. Accordingly the cases will be considered together.

The December 10th robbery (Record 7096) occurred at approximately 10:15 A.M. In charge of High's Ice Cream Store at the time were Mrs. Virginia Beamer and Mrs. Mary Weese. The evidence disclosed that a man, subsequently identified as defendant, came in the front door of the store from South Sycamore Street. He was armed with a small black pistol, which he pointed at the two ladies, and proceeded to take the money from the cash drawer. The robbery was accomplished in three to five minutes, and defendant backed out the store.

Mrs. Beamer did not see defendant from the date of the December 10th robbery until the date of his trial on February 27, 1968. She testified that defendant was the robber, saying she was as "[s]atisfied as I can be, you don't forget a face that points a gun at you". She described defendant as wearing a dark blue jacket, tan khaki pants, a small brimmed hat and sunglasses. She said defendant had a mustache on December 10th but that it was not quite as thick as it was the day of trial.

Mrs. Weese testified that the robber, after taking the cash, turned around and said, "he didn't have time to get it all, but he would be back"; and as he was leaving said: "I wouldn't advise you to call the police". This witness identified defendant as the man who robbed the store on December 10th, and again on December 18th and said she recognized him as soon as he came to the door on December 18th.

Shortly after the robbery on December 18th, Mrs. Weese went to the Petersburg Police Headquarters and made a positive identification of defendant.

The robbery of December 13, 1967 (Record 7097) occurred about 8:30 P.M. At that time Mrs. Elizabeth Keeton and Mrs. Lucille Phillips were in charge of the store. Mrs. Keeton testified that the robber, whom she identified as defendant, came in off the street, observing: "Oh, you freeze to death outside." When she turned to look, defendant said: "I come by to pick up your money." Defendant held the gun up and said to the two ladies: "Stand still, don't move." While taking the money out of the drawer, he said: "I don't have time to get it all, but I'll be back later." After he got the money he said again, "I'll see you later".

Mrs. Keeton was "definitely sure" that defendant was the robber, stating that she was close to him and looked him right in the face.

Mrs. Phillips testified subtantially to the same effect as Mrs. Keeton, saying that defendant was armed with a pistol and that he said, "I've come to pick up the money". This witness estimated the time the robbery took at not over five minutes.

Witness said that defendant was dressed in a "light-weight jacket . . . a olive drab or kind of a tannish . . . jacket, and it came down just a fraction below his hips" and identified him as the man who robbed the store on December 13th and again on December 18th. She said that she had a full-face and a profile view of the robber, and observed that defendant had a small mustache, and that his hair was cut straight across in the back. This witness said he wore sunglasses, had a "swaggering-like walk", and was about "five feet . . . seven, and medium build . . . and . . . between twenty and twenty-three years old, approximately". She was positive in her identification, saying that he "didn't resemble anybody that I had seen before".

The December 18, 1967 robbery (Record 7098) followed the same pattern as the previous two. The clerks in charge of the ice cream store on December 18th were Mrs. Mary Weese, who had been present at the December 10th robbery, and Mrs. Lucille Phillips, who had been present when the store was robbed on December 13th.

Mrs. Weese testified that on December 18th, about 10:40 A.M., when defendant walked in the store, she recognized him from the December 10th robbery and said: "Well, here we go again." Upon entering the store defendant announced: "I came after it all this morning". Defendant kept one hand in his right pocket and from its position she thought he had a gun.

Defendant scooped the money out of the cash drawer and said: "I'm giving one of you ladies exactly fifteen seconds to get in the

back room and get the rest of the money for me". Mrs. Phillips went to the back room to get the money. Defendant followed her, took the money which was in that room and put it in his pocket.

Mrs. Weese stated that defendant was close enough for her to have reached out and touched him. She was positive in her identification and entertained "[n]o doubt whatsoever" about it. Approximately 60 to 90 minutes after the robbery on December 18th, Mrs. Weese went to police headquarters and identified defendant as the man who had robbed the store on December 18th and December 10th. She said that going to police headquarters "never helped my identification one bit". She had already seen the man on December 10th and again the morning of December 18th when he appeared in the store for the third robbery.

Mrs. Weese described defendant as dressed on December 18th in a dark blue jacket or windbreaker zipped up in front. She said he was wearing light trousers, a kind of a plaid, with a little red and black stripe running down through it, and that he wore dark rimmed sunglasses. She also noted his mustache, and said that on December 18th, defendant was beginning to grow chin whiskers.

Mrs. Lucille Phillips testified that she identified defendant on December 18th, immediately he walked in the door of High's Store, as being the same man who had robbed her on December 13th. She said that defendant kept his hand in his pocket as if he had a pistol; that he was "kinda holding it up, pointing it towards me"; that he wore a short dark blue nylon jacket; and that on the occasion of the last robbery, defendant said: "I've come back to pick up the rest of the money." After removing the money from the cash drawer and forcing Mrs. Phillips to give him the money from the back room, defendant said: "I told you that I wanted it all".

Mrs. Phillips went to the police station a short time after the December 18th robbery and again recognized defendant as the same person that she had recognized that morning, "just as soon as he came in the store as the same person who robbed the store on December 13th". This witness also noted the checkered or plaid trousers worn by defendant on the occasion of the third robbery, his sunglasses and the beginning of a beard on his chin.

Defendant had been assigned to Fort Lee, an Army camp located near Petersburg, Virginia; but when not on the post, he stayed at 120 Spruce Street, the home of an aunt. This street is about a block and a half from High's Ice Cream Store, and defendant said he passed

the store frequently. At the time of the robberies defendant admitted having been AWOL from Fort Lee since November 24, 1967, and having stayed in Petersburg at the Spruce Street address from that time until his arrest on December 18th. He admitted to the ownership of a tan and brown coat and three pairs of checkered plaid pants.

Defendant denied involvement in the robberies and testified in his own behalf in the trials that were conducted on January 29th and February 5th.

Defendant relies upon *United States* v. *Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967); *Gilbert* v. *State of California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967); and *Stovall* v. *Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. 2d 1199 (1967). In view of the conclusion we have reached in the instant cases, no discussion of or citation from cases, except *Wade,* is indicated.

In *Wade* the identification of the defendant, charged with bank robbery, was made by witnesses nearly eight months after the crime was committed, sixty days after an indictment had been returned and over a month after defendant had been arrested and counsel had been appointed to represent him. Without notice to Wade's attorney, the defendant was placed in a lineup with five or six other prisoners, after strips of tape had been attached to each person similar to those worn by the alleged robber. Each person in the lineup was required to speak the same words that the robber is alleged to have spoken.

These paragraphs from the opinion of Mr. Justice Brennan in *Wade* are pertinent:

> "We come now to the question whether the denial of Wade's motion to strike the courtroom identification by the bank witnesses at trial because of the absence of his counsel at the lineup required, as the Court of Appeals held, the grant of a new trial at which such evidence is to be excluded. We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. . . .

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun* v. *United States,* 371 U. S. 471, 488, ' "[W]hether, granting establishment of the primary

illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt 221 (1959).' See also *Hoffa* v. *United States*, 385 U. S. 293, 309. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U. S. 218, 239, 240, 241, 87 S. Ct. 1926, 1939, 1940, 18 L. ed. 2d 1149, 1164-65.

The Supreme Court vacated the judgment of the Court of Appeals and remanded *Wade* for a determination to be made by the district court of "whether the in-court identification had an independent source, or whether, in any event, the introduction of the evidence was harmless error". The district court was authorized after such a hearing to reinstate the conviction of the defendant or to order a new trial.

We now apply the factors set forth in *Wade*. With reference to "the prior opportunity to observe the alleged criminal act", the witnesses to the robbery of December 10th were Mrs. Beamer and Mrs. Weese; to the December 13th robbery were Mrs. Keeton and Mrs. Phillips; and to the December 18th robbery were Mrs. Phillips and Mrs. Weese.

All three robberies followed an identical pattern. Two were in the daytime and one at night. The evidence showed the store and the area to be well-lighted. No customers were in the store on either occasion, so there was nothing to distract the attention of the clerks from defendant. Each robbery was made in a rather unusual manner. The robber wore no mask and made no effort to alter or disguise his appearance. The witnesses were close enough to the robber to have touched him. Each time he lingered from three to five minutes, giving the witnesses ample opportunity to observe him, his physical characteristics, speech, dress and mannerisms. This they did

and described in great detail and accurately. The clothes they described were clothes of a type and kind defendant admitted owning.

In each robbery, defendant did something unusual or bizarre which stamped the incident and the identification indelibly on the minds of the witnesses.

Fortunately the two clerks on duty at the ice cream store when defendant made his promised third return visit on December 18th were Mrs. Weese (who immediately recognized him from the December 10th encounter) and Mrs. Phillips (who immediately recognized him from the December 13th encounter). In fact, the first thing Mrs. Weese said when defendant came in the door on December 18th was: "Well, here we go again."

Only Mrs. Weese and Mrs. Phillips were asked to go to the police station and look at a suspect, defendant, to determine if he was the person who had robbed the store on the 18th. While the ladies went separately, each recognized and identified defendant instantly. There is not the slightest intimation in the record that any pressure, coercion or suggestion was used to bring about this identification, or that the visit aided them in identifying defendant. It was made within sixty to ninety minutes after the December 18th robbery and while the case was under investigation.

Turning again to a factor suggested by *Wade*—"the existence of any discrepancy between any pre-lineup description and the defendant's actual description"—we find no such discrepancy in the instant cases. The witnesses gave an accurate description of defendant, even noting the extent of the growth of his mustache and chin whiskers, his coloration, and the swagger in his walk.

Another factor to be considered, according to *Wade*, is "any identification prior to lineup of another person". Here there has never been any identification of any person other than defendant. In fact, the records show that following the December 13th robbery, the police picked up a suspect who was viewed by Mrs. Keeton and Mrs. Phillips. Both ladies said that this suspect was not the person who robbed them on December 13th.

Applying the remaining factors in *Wade* to the instant cases, there was no identification "by picture of defendant prior to the lineup", or "failure to identify the defendant on a prior occasion". With reference to "the lapse of time between the alleged act and the lineup identification", there was no appreciable lapse in the instant cases.

The identification of defendant in the police station on December 18th was no more than a confirmation of a previous positive and unequivocal identification of defendant as the same individual who not only had robbed them on December 18th, but had committed the same act on December 10th and 13th. On December 18th Stanley was no longer a stranger to Mrs. Weese and Mrs. Phillips. They knew him from a previous encounter, and under circumstances which had made a lasting impression.

Applying the standards prescribed in *Wade* to the cases under review, it is apparent that the in-court identification of defendant Stanley, by the victims of his robberies, had an independent origin, and were in no way colored or tainted by their identification of defendant in the Petersburg police station on December 18th. The Commonwealth has established by clear and convincing evidence the fact that the in-court identifications were based upon observations of Stanley, other than the identification made in police headquarters.

■ We find no merit in the contention by defendant that prior to the taking of the testimony in the cases, the Commonwealth should have presented evidence in an independent hearing that the "out-of-court identification had not tainted the in-court identification". Rules which govern procedure and the introduction of evidence provide ample opportunity for a trial court to rule upon the admissibility of evidence.

The conviction of the defendant in each case is fully supported by the evidence. For the reasons assigned, the judgments of the court below in the cases under review are

*Affirmed.*