## Richmond

STANLEY TYRONE ZEIGLER v. COMMONWEALTH OF VIRGINIA.

DON C. HAWKINS v. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Records Nos. 7758, 7759 and 7766.

Present, All the Justices.

*Barry S. Comess (Harrison Bruce, Jr.,* on brief), for plaintiff in error in Record Nos. 7758 and 7759.

*Katherine Hardwick Johnson,* for plaintiff in error in Record No. 7766.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error in Record Nos. 7758, 7759 and 7766.

COCHRAN, J., delivered the opinion of the court.

Stanley Tyrone Zeigler was tried by the court without a jury and found guilty, under one indictment, of armed robbery in Williamsburg on October 29, 1969, and, under another indictment, of armed robbery in James City County on October 10, 1969. He was sentenced to serve 15 years in the State Penitentiary for the Williamsburg robbery and 20 years for the James City County robbery, the court suspending execution of sentence for the latter conviction and placing Zeigler on probation for life.

Don C. Hawkins was tried separately by the court without a jury and found guilty of the same armed robbery in Williamsburg of which Zeigler was convicted. He also was sentenced to confinement in the State Penitentiary for 15 years.

We granted Zeigler and Hawkins writs of error to the judgments of conviction to consider questions arising from their identification by witnesses at pre-indictment lineups conducted in the absence of counsel. The other assignments of error have insufficient merit to warrant discussion here.

The evidence shows that the Williamsburg robbery occurred shortly after 10 p.m. Jeanne Westwood, Harriet Hines and Michael Jenkins, employees of Inez Cushard, Inc., T/A Holiday Inn East, were on duty. Jenkins told Mrs. Westwood that someone at the front desk wished to register. Proceeding to the desk, Mrs. Westwood began to discuss accommodations with a young man in a large beret and dark green army-type coat, when he suddenly pulled a sawed-off shotgun from his waistband, trained it on her across the counter, and told her that this was a "stick-up". A second man wearing a white shirt came behind her with a pistol. A third man entered the lobby carrying a bag into which he emptied the contents of the cash drawer and safe. This unarmed third man was the only robber whose face was concealed; he wore a black turtleneck sweater pulled up over his nose. Before leaving, the robbers also stole purses containing money belonging to Mrs. Westwood and Mrs. Hines.

During the robbery, which consumed about ten minutes, the robber with the shotgun remained facing Mrs. Westwood. She identified him in court as Zeigler. The robber with the pistol faced Jenkins, who identified him in court as Livingston, with whom we are not here concerned. Jenkins also testified that Zeigler resembled the man who held the gun on Mrs. Westwood.

Mrs. Westwood identified the third robber as Hawkins, testifying that when he had bent over to look in the safe his sweater had slipped

down from his face so that she "could see his features closely". She had observed his face for three or four seconds from a distance of about two feet.

Mrs. Westwood, who painted and sketched faces for a hobby, promptly furnished to the police a description of the three robbers, including their approximate ages, heights, weights and wearing apparel.

The evidence shows that the James City County robbery took place at the Howard Johnson Restaurant about midnight. A man with a sawed-off shotgun, accompanied by two other men, one armed with a pistol and the other wearing a turtleneck sweater pulled over his face, made the manager, James Herring, and the cook, Tommy Brown, lie down on the kitchen floor. Herring was then forced to open the office safe and surrender the keys to the cash register, both of which were robbed by the intruders. The robbers also stole Herring's billfold containing $580.

At the trial, Herring testified that Zeigler appeared to be "similar" to the robber with the shotgun. Herring could not be sure because Zeigler was dressed differently.

Linda Bailey, a waitress at the Howard Johnson Restaurant, testified that she had seen the robber with the shotgun before he fled. She identified him in court as Zeigler, testifying that while she could not be sure "it looks like him".

Brown, the cook, identified Zeigler in court and testified that, after the robbery, he recalled having known Zeigler when they had attended school together.

About a month after the Williamsburg robbery, the investigating officers received word that three robbery suspects were being held in Henrico County jail. Lineups, arranged by the Sheriff of Henrico County, were conducted there on November 28, 1969.

On that date Mrs. Westwood viewed two lineups of the same six men in different order. She identified Hawkins and Zeigler in each lineup but was never sure about the identification of the third robber. Jenkins was unable to make any positive identification at the lineups.

Miss Bailey independently viewed the same two lineups and identified Zeigler in each.

Prior to trial, motions were filed by Zeigler and Hawkins to suppress evidence of the lineup identification by Mrs. Westwood because the lineups were conducted without notice to and in the

absence of counsel and without a waiver of the right to counsel, and to suppress in-court identification testimony by her as tainted by these same lineups. After a pre-trial hearing, at which extensive evidence was introduced, the motions to suppress were overruled and the cases proceeded to trial.

During Hawkins' trial, motions were made and overruled to strike the Commonwealth's evidence of the lineup identifications and the in-court identification testimony for the reasons previously argued at the hearing on the pre-trial motion to suppress. Zeigler's counsel did not object at trial to the introduction of evidence of the lineup identifications and he assigned error only to the failure of the court to exclude the in-court identification.

At the time of the lineups Zeigler and Hawkins had counsel representing them on the charges for which they had been arrested and were then being held in Henrico County jail. Their counsel were not notified that the lineups were to be conducted and were not present, nor were Zeigler and Hawkins advised that they were entitled to have counsel present. They contend that the lineups were therefore invalid as infringements upon their rights to counsel as delineated in *United States* v. *Wade*, 388 U.S. 218 (1967) and *Gilbert* v. *California*, 388 U.S. 263 (1967).

In *Wade*, a federal prosecution, it was held that a post-indictment pre-trial lineup was a "critical" stage of the prosecution of an accused. To conduct such a lineup without counsel present, or without an intelligent waiver of the right to have counsel present, was held to be a violation of the accused's Sixth Amendment right to counsel. But the Court also held that in-court identification testimony would be admissible at trial if the prosecution showed that it was not "tainted" by the constitutionally invalid lineup. In *Gilbert*, the same rulings were, under the Fourteenth Amendment, applied to a state court prosecution. Moreover, the Court there held that all testimony of witnesses regarding the illegal lineup must be excluded from the trial.

The reaction to *Wade* and *Gilbert* has been diverse. The Congress of the United States has undertaken to overrule *Wade* in Federal prosecutions by a provision of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3502,[1] the constitutionality of which has not yet been tested. Some courts have strictly

---

[1] *See* Note, *Wade: The Pre/Post Indictment Dilemma*, 4 *John Mar. J. Prac. & Proc.* 316, 335 (1971).

construed *Wade* and *Gilbert* as applicable only to post-indictment lineups.[2] Others have held that they should apply to all pre-trial witness-suspect confrontations, including pre-indictment[3] and even pre-arrest[4], lineups. Many courts, while assuming that absence of counsel at pre-indictment lineups violates the *Wade-Gilbert* rule, nevertheless have affirmed convictions by finding that in-court identifications had independent sources.[5] The Supreme Court itself has not extended, modified or clarified *Wade* and *Gilbert* as to lineups since holding in *Stovall* v. *Denno*, 388 U.S. 293 (1967), decided the same day, that they would not be applied retroactively.

 We held, in *Buchanan* v. *Commonwealth*, 210 Va. 664, 173 S.E.2d 792 (1970), that *Wade-Gilbert* would not be applied to a pre-indictment lineup conducted 12 hours after arrest and before appointment or employment of counsel. In *Martin* v. *Commonwealth*, 210 Va. 686, 173 S.E.2d 794 (1970), decided the same day as *Buchanan*, we held that no counsel was required at a confrontation for identification purposes between victim and suspect fifteen or twenty minutes after the crime.

In *Williamson* v. *Commonwealth*, 211 Va. 57, 175 S.E.2d 285 (1970), we considered the validity of a pre-indictment confrontation between the victim and a suspect who was under arrest on an unrelated charge. There, a lineup was held before counsel had been appointed. The victim tentatively identified the suspect but was not sure. Several days later, at a preliminary hearing on the unrelated charge, the victim was present and positively identified the suspect. The same day a warrant was issued. Although the record did not clearly show whether the suspect had been advised that he had a right to counsel at the lineup, we held that absence of counsel "is not

---

[2] *State* v. *Fields*, 104 Ariz. 486, 455 P.2d 964 (1969); *Perkins* v. *State*, 228 So. 2d 382 (Fla. 1969); *People* v. *Cesarz*, 44 Ill. 2d 180, 255 N.E.2d 1 (1969); *People* v. *Palmer*, 41 Ill. 2d 571, 244 N.E.2d 173 (1969); *Gaitan* v. *State*, 464 S.W.2d 33 (Mo. 1971); *State* v. *Walters*, 457 S.W.2d 817 (Mo. 1970); *State* v. *Borchert*, 479 P.2d 454 (Mont. 1971).

[3] *United States* v. *Ayers*, 426 F.2d 524 (2d. Cir.), *cert. denied*, 400 U.S. 842 (1970); *Rivers* v. *United States*, 400 F.2d 935 (5th Cir. 1968); *People* v. *Fowler*, 1 Cal. 3d 335, 461 P.2d 643, 82 Cal. Rptr. 363 (1969); *Palmer* v. *State*, 5 Md. App. 691, 249 A.2d 482 (1969); *In re Holley*, 268 A.2d 723 (R.I. 1970).

[4] *United States* v. *Greene*, 429 F.2d 193 (D.C. Cir. 1970); *United States* v. *Phillips*, 427 F.2d 1035 (9th Cir.), *cert. denied*, 400 U.S. 867 (1970). *See People* v. *Martin*, 2 Cal. 3d 822, 471 P.2d 29, 87 Cal. Rptr. 709 (1970).

[5] *E.g.*, *United States* v. *Ranciglio*, 429 F.2d 228 (8th Cir.), *cert. denied*, 400 U.S. 959 (1970); *United States* v. *Broadhead*, 413 F.2d 1351 (7th Cir. 1969), *cert. denied*, 396 U.S. 1017 (1970); *Martinez* v. *State*, 437 S.W.2d 842 (Tex. Crim. App. 1969); *State* v. *Hicks*, 76 Wash. 2d 80, 455 P.2d 943 (1969).

of itself a sufficient ground to exclude from evidence an in-court identification", that the lineup was properly conducted, and that Williamson was not prejudiced thereby unless it tainted the in-court identification.

No exclusionary pre-trial hearing had been requested nor was any objection made at the trial that the victim's in-court identification had been tainted by the lineup or other pre-trial confrontation. While holding that Williamson was not entitled to raise this question for the first time on appeal, we concluded that the record established that the in-court identification had an independent origin untainted by the lineup.

The risk of suggestibility and the need for reconstruction of the pre-trial identification confrontation for cross-examination purposes, which concerned the Supreme Court in *Wade* and *Gilbert*, may be as great in pre-indictment as in post-indictment lineups. But we believe that law enforcement officers should be permitted to have suspects identified during pre-arrest investigation without requiring the presence of counsel.

Here, the lineups were held before Zeigler and Hawkins had been accused of the crimes in Williamsburg and James City County. The cases were in the investigatory rather than the accusatory stage. While we find it unnecessary at this time to decide whether the *Wade-Gilbert* rule will be applied to any pre-indictment lineup, we hold that presence of counsel is not required at a pre-indictment lineup conducted in the investigatory stage before a suspect has been charged with the crime for which the lineup is held. Such a confrontation is not a critical stage in the prosecution, within our interpretation of *Wade* and *Gilbert*. See *United States* v. *Davis*, 399 F.2d 948 (2d Cir.), *cert. denied*, 393 U.S. 987 (1968); *State* v. *Butler*, 256 A.2d 588 (Me. 1969); *State* v. *Wright*, 274 N.C. 84, 161 S.E.2d 581 (1968), *cert. denied*, 396 U.S. 934 (1969); *State* v. *Isaacs*, 24 Ohio App. 2d 115, 265 N.E.2d 327 (1970); *Hayes* v. *State*, 46 Wis. 2d 93, 175 N.W.2d 625 (1970); Note, *The Right to Counsel at Lineups: Wade and Gilbert*, 36 *U. Chi. L. Rev.* 830, 838 (1969). Indeed, there is no prosecution pending at this stage and one may never be initiated. So Zeigler and Hawkins were not entitled to counsel at the lineups.

Moreover, although the trial court made no specific determination of lack of taint, the record shows that the facts relevant to this issue were fully developed and established that the in-court iden-

tifications had independent sources and were not tainted by the lineup identifications. *Stanley* v. *Commonwealth*, 210 Va. 490, 171 S.E. 2d 846 (1970). *See, e.g., State* v. *Singleton*, 253 La. 18, 215 So. 2d 838 (1968); *State* v. *Mentor*, 433 S.W.2d 816 (Mo. 1968); *Lucas* v. *State*, 444 S.W.2d 638 (Tex. Crim. App. 1969). There was prior opportunity to observe the criminals during the commission of the robberies, there was no material discrepancy between pre-lineup descriptions and the defendants' actual descriptions, there was no identification of another person prior to the lineups, there was no identification by picture prior to the lineups, there was no failure to identify either defendant on a prior occasion, and there was no great lapse of time between the crimes and the lineups. Hence, various criteria for establishing independent sources of identification as set forth in *Wade, supra* at 241, are met.

█ Unless there was a violation of due process, therefore, the evidence of lineup identifications and in-court identifications was admissible.

To determine whether there has been a violation of due process in the conduct of the lineups we must examine "the totality of the circumstances". *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967).

The witnesses viewed the lineups separately and did not discuss the results of their observations. There was no discussion of the lineups between witnesses and police officers.

Photographs of the lineups show that all six participants, including the three suspects, were black males. There is nothing to indicate that Zeigler and Hawkins were singled out. The record shows that they were not required to speak, wear distinctive clothing or perform any physical act except appear in the two lineups. They were somewhat taller and lighter skinned than the three non-suspects, one of whom was much older than the others in the lineups. The trial court considered and criticized this age discrepancy but found that the lineups were fairly conducted. We agree. There is no requirement that all participants be alike in appearance. *Williamson* v. *Commonwealth, supra* at 59, 175 S.E.2d at 287. We conclude that there was no violation of due process.

The judgments of conviction are

*Affirmed.*