## CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Donald E. Foy

May 25, 1984

Case No. 84-CR-40

By JUDGE PERRY W. SARVER

Set forth herein is the opinion of the Court after hearing the evidence and consideration of argument of counsel on a Motion to Suppress filed by defendant. Said hearing was held on May 2, 1984, and subsequent thereto counsel filed memoranda of authorities in support of their respective positions which are filed in the court file.

The statement of facts in Mr. Watt's memorandum essentially sets forth the circumstances surrounding the offense and the events leading up to and including the identification of defendant by the complaining witness at the Winchester Police Department on November 15, 1983.

For the reasons set forth herein, the Court denies defendant's Motion to Suppress and holds that the identifications of defendant by the complaining witness on October 25, 1983, and November 15, 1983, as set forth in the Commonwealth's Bill of Particulars, may be admitted at the trial of this matter.

The Court further holds that defendant was not entitled to have counsel present at the confrontation between the complaining witness and defendant, notwithstanding the fact that he was under arrest at the time. The Supreme Court held in *Zeigler v. Commonwealth*, 212 Va. 632 (1972), that presence of counsel is not required at a pre-indictment lineup conducted in the investigatory stage before a suspect has been charged with the crime for which the

lineup is held. The court found it unnecessary at the time to decide whether the *Wade-Gilbert* rule would be applied to any pre-indictment lineup. *Id.*, 637.

While in the case at hand the investigatory stage had passed and defendant was under arrest at the time of the identification, the court further stated in *Zeigler* at page 636, *citing Buchanan v. Commonwealth*, 210 Va. 664, 173 S.E.2d 792 (1970), and its holding therein, that *Wade-Gilbert* would not be applied to a pre-indictment lineup conducted 12 hours after arrest and before appointment or employment of counsel.

In *Buchanan*, at page 666, the court discussed the right to counsel at police lineups as expounded by the United States Supreme Court in *Wade*, *Gilbert*, and *Stovall* (all cited by Counsel in their respective memoranda). These cases were decided at the same time and in *Stovall* the court held that the right to counsel was to be applied prospectively and the effect of *Wade* and *Gilbert* was to expand from that date, the dimensions of the rights theretofore enjoyed by an accused. The dimensions were expanded to include the right to counsel at a post-indictment confrontation between the accused and the witness.

The court further stated in *Buchanan* that the crucial inquiry then becomes whether *Wade* and *Gilbert*, factually presenting questions related solely to post-indictment lineups conducted after appointment of counsel, should be held to apply to the lineup involved in that case, conducted several hours after the occurrence of the offense and before indictment and appointment of counsel. The court stated that this inquiry should be answered in the negative. The court went on to say that while it may be argued from the broad language employed in *Wade* and *Gilbert* that the Supreme Court would require presence of counsel at every pre-trial witness-suspect confrontation, such a proposition has been almost universally rejected by local appellate courts, both state and federal. The court cited several cases in *Buchanan* on pages 666 and 667 in support of this.

While it appears that this doctrine has been applied in cases where the confrontation occurred *near* the time of the alleged criminal act, it is the holding of this Court that the time frame in question "three weeks" has not distinguished the case at hand from the cases cited in *Buchanan*.

It appears that there is no fixed time between crime and indictment when there accrues the right to counsel at a witness-suspect confrontation. When and if that time does arrive in a given case should depend, as the Supreme Court said in *Stovall*, "on the totality of the circumstances" surrounding the confrontation. *Buchanan* at 667.

In the case at hand, as in *Buchanan*, the defendant had not been indicted at the time of the confrontation, and there was no counsel to notify of the showup. Although the period of time in question between the arrest and identification is 12 hours in *Buchanan* and three weeks in the case in hand, there is nothing in this case detracting from "the desirable objective of fresh, accurate identification" which was emphasized by Judge Burger in *Bates v. United States*, 405 F.2d 1104 (D.C. Cir. 1968). The totality of the circumstances and facts showing a fresh, accurate identification will be addressed below.

Most, if not all of the above-mentioned cases involved lineups, whereas the identification in the case at hand was a showup in which only the suspect was exhibited to the witness. It is the opinion of the court that the controlling case in this situation is *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This case involved a showup as opposed to a lineup. The court stated therein that the reliability of an identification must be determined based on the totality of the circumstances. Although a showup procedure may be unnecessarily suggestive, the evidence of the identification does not have to be excluded if there is no substantial likelihood of misidentification, and the Court holds that in the case at hand there is no substantial likelihood of misidentification. The primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." *Id*, at 410 (all *cites* are to 34 L.Ed.2d). It is the likelihood of misidentification that violates the defendant's rights to due process, and it is this which was the basis of the exclusion of evidence in *Foster v. California*, 394 U.S. 440, 22 L.Ed.2d 402, 89 S.Ct. 1127 (1969). Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence

of a showup without more does not violate due process. *Id.*, at 411.

Mr. Justice Powell in his opinion beginning on page 411 stated several factors to be considered in evaluating the likelihood of misidentification which are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

Considering all of the above, the Court finds that the circumstances existing in this case are much stronger in insuring an accurate identification than those that existed in *Neil v. Biggers.*

In the case at hand, the complaining witness had a more than adequate opportunity to view the defendant and in fact saw him on two occasions the morning of the offense. She, of course, saw him at the time of the alleged assault. Initially, her assailant told her not to look at him and pushed her head away from him so as to deflect her view of his face. He then proceeded to attempt to disrobe her and when he found that she was menstruating, his efforts in that regard ceased. He then grasped both of her hands in one arm and proceeded to masturbate and in fact ordered her to watch him as this act was performed. She then had more than ample opportunity to observe him face to face. On completion, her assailant left and she followed shortly thereafter and had further opportunity to observe him in his automobile and once again saw him face to face. The latter confrontation was only for a few seconds but the complaining witness testified that she had ample opportunity to see him and recognized him as her assailant. She also testified that there was no one in the automobile with him. All told, her testimony was that she had an opportunity to observe him for a least 15 minutes and the Court finds that, under the circumstances at hand, this is ample opportunity for her to view her assailant. With regard to the second factor set forth in *Neil v. Biggers*, certainly the complaining witness' degree of attention was such as to support a reliable identification. The parties were very close together, as noted above; first defendant attempted to remove some of her clothing and then stood in close proximity to her and held both of her arms with one hand,

her attention was riveted on him and there is nothing to suggest that she was hysterical, or in such state of mind as to create doubt as to her ability to focus her attention upon her assailant. This is further evidenced by her ability to give a complete description of her assailant to the police officers subsequently, so it would appear that she was attentive and maintained a degree of presence of mind to enable her to give this detailed description. This, of course, is linked to the third factor, or the accuracy of the complaining witness' description. At the suppression hearing, she described him as having a beard, moustache, wearing old blue jeans, a fleece lined Levi jacket, work shoes, having wavy hair, being approximately 5'5" to 5'7" tall, weighing 150 pounds and being approximately 35 years of age. She further testified that his beard was flecked with gray and he was chubby. The description was an accurate description and all of the features described fitted the defendant.

There is no question as to the certainty of the witness's identification of the defendant at the confrontation at the Winchester Police Department on November 15, 1983. Her testimony at the suppression hearing was that when she looked through the window and saw him, she started crying, screaming and said "that's him." She was helped upstairs by one of the police officers and stated that it took her approximately 10 minutes to regain her composure. Corporal R. Goldizen was with the complaining witness in the police station at the time of the identification and he stated that when she looked in the window, her knees buckled and she became hysterical and going up the steps to Corporal Goldizen's office she kept saying "that's him, that's him." The identification by the complaining witness is much more positive than that set forth in *Biggers.*

The Court must consider the fact that the police did direct her attention to the defendant since this was a showup and not a lineup. However, considering the positiveness of the witness's identification and the other factors listed, it is the holding of the Court that these factors negative any improper suggestiveness that may have arisen by the officer's actions.

While it is true that the complaining witness was unable to identify defendant through a view of the photographs, she had not identified any other suspect as her assailant in any of her views of the photographs. She

first was given an opportunity to view mug shots, however, the defendant's photograph was not among the pictures offered. She stated that there were some who were similar in appearance, but no identification was made. She was next given an opportunity to view a six picture array, which included a photograph of the defendant, and once again she stated there was a similarity between one photograph and the defendant; but she did not identify any one as being the defendant.

It is the opinion of the Court that the complaining witness was using caution in identifying any person as her alleged assailant until she was absolutely sure. The Court had an opportunity to view the photograph of defendant that was contained in the six picture photographic array, and this photograph is not a good likeness of defendant and it is understandable that the complaining witness would be hesitant to make a positive identification based upon the quality of this photograph.

The Court would conclude by pointing out also that in *Neil* v. *Biggers* the identification took place some seven months after the offense, while the identification in the case at hand took place three weeks after the alleged offense. Also, in *Biggers* the incident took place at night and the complaining witness first saw her assailant in a room where the lights were out and the only light was furnished by artificial lighting from an adjoining room, and then the actual rape took place outside and the only light furnished was by way of moonlight. The incident at hand, however, took place during the daylight hours, in the early morning, and the time was approximately 7 a.m. with the sun in the rising stage. This was more than adequate to allow her an accurate view of her assailant whom she subsequently identified as the defendant in this case.

Having held that the totality of the circumstances are such as to negative any likelihood of misidentification of the defendant; that the complaining witness may testify as to her identification on October 25 and November 15, 1983; and the Court also having previously set this matter for trial, tentatively, on June 12, 1984, this matter is now set for trial on June 12, 1984 at 9:30 a.m. before a felony venire.