People of the State of Illinois, Defendant in Error, v. John Cobb (Impleaded), Plaintiff in Error.

## Gen. No. 49,757.

First District, Fourth Division.

October 14, 1964.

MR. JUSTICE DRUCKER delivered the opinion of the court.

In a joint bench trial the defendant, John Cobb, was convicted of armed robbery of Cesar Alvarez and sentenced to the penitentiary for a term of not less than five nor more than ten years and defendant's wife, Leabert Cobb, was convicted of the same offense. However, only John Cobb filed a Writ of Error.

Defendant contends that: (1) he was not proved guilty beyond a reasonable doubt, (2) hearsay evidence of a police officer as to the identification of the defendant (and his wife) by complaining witness Alvarez was improperly admitted, and (3) defendant's counsel was unduly restricted in the cross-examination of a prosecution witness to show the record of a felony conviction of said witness.

At the trial Alvarez testified that on September 12, 1962, at about 1:30 p. m., he was looking for a

* See Callaghan's Illinois Digest, same topic and section number.

variety of small items including picture frames, in the area of Maxwell and Halsted Streets; that he was carrying "some money"; * that he saw a woman (later identified as Leabert Cobb) who, upon ascertaining he was looking for picture frames, indicated that she had some picture frames at her place which was a half block away; that the two proceeded to 1319 South Newberry Avenue, ascended three flights of stairs, continued to a corner room through a door which she pushed open. On cross-examination Alvarez testified, "she pushed the door a little and she got in and I follow and I said 'Where is the picture frame' "? Alvarez testified that as he "start[ed] to see the picture frame" defendant appeared and started fighting with "a big knife in his right hand, big knife against me"; that defendant hit him with the knife, inflicting a small wound under his left arm; that he (Alvarez) jumped back; that he used his right hand in an attempt to ward off his assailant; that defendant inflicted other cuts and punched Alvarez in the right eye and that Leabert Cobb took Alvarez's wallet containing $219. In the shuffle Alvarez's watch and ring landed on the floor. Alvarez testified that a couple entered the room. They were subsequently identified as Horace Dreams, who had resided at the apartment for about eight months, and his girl friend, Louise Jones. Dreams gave the watch and ring to Alvarez. On rebuttal Dreams indicated that he broke up the "struggling." Alvarez testified that "these people run away from the room and the man with the knife say, 'Don't go out before we go, don't go away.' "

Alvarez testified further that he left the apartment in search of the police and five minutes later, accompanied by a police officer, entered the room in which

---

* Further testimony indicated the sum to be $219, most of it to be spent to purchase a ticket to go to Canada on his vacation.

he had been robbed but found no one. At 3:00 p. m. two detectives accompanied Alvarez to the scene of the crime where Dreams indicated that Alvarez's assailants were the Cobbs. Defendant was apprehended that same day.

Louise Jones testified that she was living at 1319 Newberry on the date in question. She asserted that she knew the Cobbs; that they had visited her many different times; that on that day Leabert Cobb and Alvarez came up to the fourth floor apartment; that Leabert Cobb gave her fifty cents to get some beer. On cross-examination Jones stated that Alvarez gave Leabert the fifty cents; that she (Jones) went to purchase the refreshments; that in the course of her trip she encountered Dreams and told him that "Leabert and a friend of hers" were in the apartment; that when she returned to the dwelling Dreams was evicting the Cobbs from the hallway; and that Alvarez "was there."

Dreams testified, on direct, that he had known the Cobbs for at least a year prior to September 12, 1962; that on that afternoon he saw John Cobb "and a Mexican fellow" struggling in his apartment; that he "broke them up from fighting"; that he "told them to get out"; that he returned Alvarez's watch; and that he was questioned that afternoon by Officer Griffin.

On cross-examination Dreams admitted that he had been convicted of felonies on two separate occasions and that he twice served time in the penitentiary. Defendant's counsel was not allowed to query Dreams as to the specific felonies or the length of the sentences.

Leabert Cobb asserted that she did not know a girl by the name of Louise Jones although she had seen her in the neighborhood; that she did not know Alvarez; that the first time she saw him was in court on

335

September 22nd. She denied any knowledge of or participation in any robbery.

Defendant denied knowing Louise Jones, Dreams or Alvarez. He claimed that on September 12th he was not working and as a consequence spent most of the day at his home, 302 West 65th Street, and that late in the afternoon he left his apartment to sell his automobile.

Defendant's first contention here is that his conviction was not established beyond a reasonable doubt, asserting that conflicts and discrepancies in the testimony of Alvarez seriously weakened his credibility as the only witness to the robbery; and that the identification of defendant raised doubt as to his guilt. Defendant questions the adequacy of Alvarez's testimony concerning the presence of Jones in the apartment when Leabert Cobb and Alvarez arrived; the uncertainty as to whether the apartment was on the third or fourth floor; whether there was a store or only a store front at 1319 Newberry; the precise time that Jones returned from her errand; the discrepancy in Alvarez's testimony as to the clothes Leabert Cobb was wearing; the precise moment of arrival of defendant; the alleged confused nature of Alvarez's testimony during cross-examination, and the fact that the knife was not introduced.

We shall first discuss the issue of identification of the defendant by Alvarez. It is apparent from the testimony that Alvarez had opportunity to observe both Cobbs in the apartment at close range. Although the room was referred to as "dark," Alvarez declared that there was an outside window. He described the room in detail, indicating that there was a table, an icebox, a bed, and that there was no rug on the floor. He also depicted the actions of defendant when the latter attacked Alvarez with a knife. It is reasonable to believe that under these circum-

336

stances Alvarez would have been able to identify his assailant and the latter's accomplice. Moreover, Alvarez identified them (1) when he described them to the detectives, (2) at the pretrial hearings and (3) at the trial. Furthermore, Jones and Dreams testified that both Cobbs were present in Dreams' apartment on the afternoon of the robbery; more specifically, Dreams stated that he broke up the scuffling between defendant and Alvarez.

██ People v. Cox, 22 Ill2d 534, 177 NE2d 211, indicates that the testimony of one witness, if it is positive and the witness is credible, is sufficient to convict even though contradicted by the accused. People v. Arnold, 27 Ill2d 294, 189 NE2d 241, elaborates on the identification requirements necessary to sustain a conviction for armed robbery. The requisites are that (1) the complaining witness is at all times unbroken in his identification of the accused and (2) the accused's alibi is not convincing. In the case at bar defendant's assertion that he did not visit the Newberry apartment on September 12, 1962, is not plausible. Alvarez's testimony as to defendant's presence is corroborated by Jones who stated that on her return from the errand Dreams ejected defendant and Leabert Cobb from the apartment, and by Dreams who asserted that he broke up a struggle between defendant and Alvarez.

The evidence indicates that Alvarez never deviated in his identification of defendant. There were some minor variations in his testimony, as recited above. These are, however, minor variations or indicative of a lack of recollection as to facets surrounding the robbery and do not significantly impair the identification of defendant. At most, the variations affect the credibility of the complaining witness, a factor to be evaluated by the court. People v. Robinson, 30 Ill 2d 437, 440, 197 NE2d 45.

In People v. Oswald, 26 Ill2d 567, 187 NE2d 685, a burglary case tried by a jury, defendant contended that the evidence did not satisfy the reasonable doubt requirement. He argued that the identification by the witness was not reliable, plausible or definite because the witness (1) did not see the face of the burglar, (2) identified the burglar solely on the basis of clothing, (3) saw the burglar for "only a brief period," (4) estimated the burglar's height as four inches less than that of defendant, and (5) identified the defendant at a time when he alone was brought before the witness for identification. The court stated at 570:

> [W]hile all of these factors do indeed go to the weight to be given (the witness') testimony, we have held that identification need not be positive to support a conviction, its weight being a question for the trier of fact to be determined in connection with the other circumstances of the case.

We also dealt with the problem in People v. Johnson, 47 Ill App2d 441, 442, 198 NE2d 173:

> In a bench trial of a criminal case the trial court's judgment based upon the credibility of the witnesses will not be disturbed unless it is based on clearly unsatisfactory and improbable evidence (cases cited). That there is a mere conflict in the evidence, however, is not sufficient to allow an appellate court to disturb the trial court's findings.

The fact that the identification was not made in a "lineup" is not prejudicial error. It is not essential that a suspect be placed among a group of individuals for the purpose of testing the ability of the witness to identify the accused. The individual

identification only goes to the weight to be afforded the testimony of the witnesses, People v. Crenshaw, 15 Ill2d 458, 464, 155 NE2d 599. The evidence as to identification in the instant case is sufficient to sustain the judgment.

The defendant contends that prejudicial error occurred when his counsel was restricted in the scope of cross-examination of Dreams. In the course of the questioning Dreams stated that he had two convictions for felonies and had served time in the penitentiary on both occasions. The trial court sustained objections to queries pertaining to the specific offenses which led to Dreams' convictions.

■ It is recognized that a witness in a criminal case may be cross-examined as to his prior convictions of infamous crimes in order to impeach his credibility as a witness, People v. Baker, 8 Ill2d 522, 525, 134 NE2d 786; People v. Moses, 11 Ill2d 84, 88, 142 NE2d 1; People v. Birdette, 22 Ill2d 577, 581, 177 NE2d 170.

■ The reason for allowing impeachment based on the incidents of prior convictions is that such convictions will or might affect that individual's credibility. Defendant placed Dreams' credibility in question by establishing that the witness had been twice convicted of felonies and had been punished. Further inquiry as to the specific felonies should have been permitted, Birdette, supra; also People v. Kirkpatrick, 413 Ill 595, 597, 110 NE2d 519, but we do not believe that its denial under the circumstances of this case constitutes reversible error.

The third error charged relates to the allegedly improperly admitted hearsay evidence of police officer William Griffin concerning Alvarez's identification of John and Leabert Cobb. The identifications took place on separate occasions.

The pretrial identification of Leabert Cobb, whose appeal is not involved here, occurred at Holiday

339

Court on September 22, 1962. At the trial Alvarez testified that before Leabert Cobb was brought before the court he indulged in no conversation with police officers. Officer Griffin testified, at the trial, that when Alvarez saw Leabert Cobb presented in open court, Alvarez exclaimed "That's the woman." An objection was advanced on the ground that there was improper foundation laid for the question. The court did not rule upon the objection. On Griffin's cross-examination, with respect to Leabert's identification by Alvarez, Leabert Cobb moved to strike that testimony as suffering from the impediments of hearsay. The motion was denied.

The evidence shows that both Cobbs were brought before Branch 44 of the Criminal Court for purposes of identification on September 25th and that Officer Griffin was present. At the trial of this case Griffin testified that Alvarez was in the presence of the defendant; that Alvarez was "right before the judge"; and that Alvarez "pointed out John Cobb as being the man that was with Leabert at the time of the offense." At no time during the trial did the defendant object or move to strike the evidence relating to Alvarez's identification of the defendant, as corroborated by Officer Griffin. Timely objection to hearsay statements must be made at trial and cannot be raised for the first time at the appellate level. People v. Trefonas, 9 Ill2d 92, 98, 136 NE2d 817. The fact that the trial of the defendants was consolidated and that the appeal was taken as to one defendant does not enable us to entertain objections to testimony made in behalf of a person who is not contesting the decision of the trial court. As stated in Carson v. Rebhan, 294 Ill App 180, at 182, 13 NE2d 630: "A party cannot assign for error that which does not affect him, though it might be harmful to others who are not complaining." Assuming

that Officer Griffin's statement was hearsay and prejudicial to Leabert Cobb, in no sense does that hearsay assertion affect John Cobb, the sole appellant in this court.

In view of the fact that we find no prejudicial error, the conviction of the defendant is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.