19002

The STATE, Respondent, v. Vance Alexander CURLEY and James Pearson, Appellants.

(171 S. E. (2d) 699)

*Messrs. Dusenbury & Dusenbury,* of Florence, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair* and *Robert H. Hood, Assistant Attorneys General,*

of Columbia, and *T. Kenneth Summerford, Solicitor,* of Florence, *for Respondents,*

January 7, 1970.

BRAILSFORD, Justice.

During the night of October 18, 1967, a place of business in Mullins, South Carolina, was entered by force. The company safe was opened with tools and looted. Vance A. Curley, James Pearson and Ulysses Rattley were charged with the the offense, put to their trial, and the two first named were convicted of safecracking. Rattley was acquitted. On this appeal by Curley and Pearson the point most urgently presented is the claim that the evidence against them was the product of a constitutionally inhibited search and seizure and should have been excluded under the rule announced in *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

Between October 18 and October 25, 1967, the three defendants were seen several times in and near the Town of Mullins in an automobile bearing North Carolina license tags. Of the three, James Pearson was known to the law enforcement officers who were investigating the break-in,

and they were looking for this car on the evening of October 25. The three men had been keeping company with three Mullins women, including Margaret Berry and Curley Mae Reeves, and were with them at the home of Margaret Berry on this evening. The automobile was registered in the name of Vance A. Curley. However, Ulysses Rattley customarily drove it and had possession of the keys. Curley Mae Reeves borrowed the automobile for the purpose of taking Margaret Berry, who was in pain, to the hospital. The keys to the ignition and trunk were delivered to her by Rattley in the presence of the registered owner, and no special instructions were given to her by either concerning the use, custody or return of the automobile. As Curley Mae drove rapidly away from the Berry home, she was followed by a deputy sheriff who had spotted the car a few seconds earlier. This officer, joined by another, pursued the car for some one-half mile through a residential area, at speeds in excess of 50 miles per hour, before Curley Mae pulled over and stopped. The two officers then walked up to the car and told the driver that they would have to make a case against her for speeding. She did not dispute that she had been driving at an excessive speed but explained that she was taking her companion to the hospital. The deputy then asked if he might look in the trunk of the car. While the testimony as to the details of what then took place is somewhat contradictory, there is substantial accord that Curley Mae assented to this request and either handed the keys to the officer or used it to open the compartment for him. Upon looking into the trunk, the officers found a pair of tennis shoes and observed peculiar characteristics of one shoe which appeared to match distinctive footprints at the scene of the break-in, of which casts had been made. (That the characteristics of the shoe and prints were identical was later confirmed by an expert of the Federal Bureau of Investigation.) Acting on this lead, the officers went to the Berry home and arrested the three men. The officers testified that the tennis shoes fit the defendant Curley but did not fit either of the other defendants.

The defendants urge that the search of the car trunk and seizure of the tennis shoes were in violation of the Fourth Amendment to the United States Constitution which declares that "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." Hence, the evidence relating to the discovery of the tennis shoes, and all other evidence derived therefrom, should have been excluded.

We have recognized our obligation to follow the decision of the Supreme Court of the United States in *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684 (1961), by which the Fourth Amendment was held applicable to the states and, with it, the federal doctrine forbidding the admission of evidence obtained by an unreasonable search and seizure. *State v. Hamilton,* 251 S. C. 1, 159 S. E. (2d) 607 (1968).

The State does not seek to justify the search as incident to a lawful arrest or upon probable cause. It does contend that the warrantless search was reasonable because consented to by the person to whom the owner had entrusted the custody and control of the automobile.

The issue naturally divides itself into two parts. (1) Does the search of an automobile by an officer at the invitation of or by the voluntary consent of a person to whom its custody and control have been surrendered by the owner, violate the owner's Fourth Amendment rights? If not, (2) did Curley Mae voluntarily consent to the search by which the tennis shoes were disclosed?

The first question is one of law and is of novel impression in this jurisdiction. We follow *United States v. Eldridge,* 302 F. (2d) 463 (4th Cir. 1962) to a negative answer. Upon analogous facts, the court of appeals held that the bailor's constitutional immunities were not violated in the search consented to by his bailee; in other words, "the bailee's consent made this a reasonable search." Id. at 466.

518

The Supreme Court of Ohio in *State v. Bernius,* 177 Ohio St. 155, 203 N. E. (2d) 241 (1964), felt impelled to the opposite view by the decision of the Supreme Court of the United States in *Stoner v. California,* 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. (2d) 856 (1964). We do not agree that *Stoner,* or any other decision of the Supreme Court of the United States which has come to our attention, is controlling against the conclusion which we reach. Instead, the recent decision in *Frazier v. Cupp,* 394 U. S. 731, 89 S. Ct. 1420, 22 L. Ed. (2d) 684 (1969), appears to support the view which we adopt. In that case, petitioner allowed his cousin Rawls to share the use of his duffel bag and left the bag at Rawls' house. The Court approved disallowance of petitioner's motion to suppress evidence discovered by the investigating officers in a search of the bag with Rawl's consent. "Since Rawls was a joint user of the bag, he clearly had authority to consent to its search. The officers therefore found evidence against petitioner while in the course of an otherwise lawful search. * * Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside. We find no valid search and seizure claim in this case." 394 U. S. at 740, 89 S. Ct. at 1425. By parity of reasoning the defendant Curley, by allowing another to use his car and, without prohibitory instructions, entrusting her with the key to the trunk, must be taken to have assumed the risk that she would accede to the request of an officer to look inside. Having to this extent surrendered his right to privacy as to the contents of the trunk, he is in no position to maintain that the shoes were discovered in derogation of it.

The second question was one of fact for the trial judge. His conclusion that the driver's consent to the search was voluntary is amply supported by the evidence and is binding upon us. Cf. *State v. Bethea,* 241 S. C. 16, 23-24, 126 S. E. (2d) 846, 849-850 (1962).

The evidence shows that another search was made of the automobile at the police station shortly after the three men were arrested, and a shotgun, pistol and some ammunition were removed therefrom. These articles were admitted in evidence over defendant's objection, and some scant reference is made in the brief to the absence of consent to this warrantless search. No issue thereabout is properly before us because no exception charges that the court erred in failing to suppress these articles or in admitting them into evidence. Nor is error in their admission asserted in the brief, which does not even point out what articles were discovered by this search.

On the day after their arrest, and while being detained in the Marion County Jail, the defendants were questioned by law enforcement officers. Curley and Rattley made no incriminating statement. Pearson confessed and implicated the other two. He also directed the officers to the place where the tools used to open the safe were hidden.

Prior to the trial, the defendants Curley and Rattley moved for a severance upon the ground that, if tried jointly with Pearson, the admission of evidence as to his confession and admissions would be prejudicial to them. We quote the second exception by which Curley complains of the refusal of this motion:

"The Court erred in failing to grant defendant's motion for a severance in the case in which the confession and/or admissions of the co-defendant Pearson were to be used, and were used, when such evidence would inevitably prejudice the rights of the other two co-defendants to a fair trial."

This exception is without merit. Under the recent decision of the United States Supreme Court in *Bruton v. United States,* 391 U. S. 123, 88 S. Ct. 1620, 20 L. Ed. (2d) 476 (1968), it would have been reversible error to admit, over proper objection, Pearson's confession inculpating his co-defendants. This was not done and the fact that

such a confession had been made was no ground for a severance.

The State, after having been admonished by the court, receded from its offer of testimony establishing Pearson's confession implicating Curley and Rattley. However, testimony was offered, and allowed over objection, that Pearson made a statement to the officers, after which he directed them to a power pole between Mullins and Marion at the base of which tools, later connected with the safecracking by expert testimony, were found. Before admitting this evidence, the court excused the jury and took the testimony of one officer who had been present when Pearson was interrogated and when he pointed out the hidden tools. While this witness was on the stand, the solicitor announced that the State would offer testimony only as to that part "of the statement of the defendant, James Pearson, that relates to, or that identifies the tools * * *." The court then recalled the jury and admitted the evidence over the objection that the "proper foundation of voluntariness" had not been laid. This was the extent of the hearing conducted by the court, although a number of other witnesses on the issue of waiver were available. No opportunity to testify on this point was afforded to the defendant before the trial was resumed. After hearing one witness, the court simply ruled that the evidence was competent and advised defense counsel that his objections were in the record.

When testimony of the same tenor was sought from another witness, the defense objected upon the specific ground that the court had made no preliminary determination of voluntariness as required by *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908 (1964). This objection was overruled, and the testimony was admitted after the officer had testified before the jury that the warnings required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966), had been given to Pearson, and that his statements and conduct were free and voluntary. There was similar testimony by other

witnesses. The record nowhere reflects that the court made appropriate findings and an independent determination that Pearson's statements and directions to the officers were free and voluntary, nor that the procedural requirements spelled out in *Miranda, supra,* had been complied with.

It is quite clear that the statements made by Pearson to the officers and the directions he gave them, which were allowed in evidence, were the product of custodial interrogation and were testimonial in character. The allowance of this evidence violated his privilege against self-incrimination unless the defendant, receiving the benefit of "procedural safeguards" required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602 (1966), voluntarily and intelligently waived the privilege. The burden was upon the State to establish such waiver in an independent hearing before a tribunal other than the trial jury, appropriately the trial judge. The record before us fails to establish that this burden has been met. Consequent error in the admission of self-incriminating evidence produced by custodial interrogation of Pearson is the final point urged in the brief. Of course, Curley has no standing to complain. The defendant Pearson must be granted an adequate evidentiary hearing on whether by Miranda standards, with respect to the evidence admitted against him, his privilege against self-incrimination was voluntarily and intelligently waived. See *State v. Cannon,* 248 S. C. 506, 151 S. E. (2d) 752 (1966); *State v. Cannon,* 250 S. C. 437, 158 S. E. (2d) 357 (1967); and *State v. Hamilton,* 251 S. C. 1, 159 S. E. (2d) 607 (1968). If upon such hearing this issue shall be resolved against the defendant Pearson, his conviction shall be affirmed by order of this court. Otherwise, an order granting a new trial shall be issued.

Affirmed as to the defendant Curley.

Remanded as to the defendant Pearson.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur