The State of Ohio, Appellee, *v.* Isaacs, Appellant.

[Cite as State v. Isaacs, 24 Ohio App. 2d 115.]

(No. 1367—Decided December 16, 1970.)

*Mr. Lawrence S. Huffman,* for appellee.

*Mr. Raymond W. Eaton,* for appellant.

Guernsey, J. Defendant Robert L. Isaacs, appellant herein, as the alleged driver of the getaway car and an aider and abettor, was convicted by the Common Pleas Court of Allen County of the armed robbery, on August 1, 1967, of a filling station. The alleged principal offender was his brother, James Isaacs. It was claimed that James Isaacs,

while wearing a woman's silk stocking over his head to conceal his facial features, held up the filling station attendant at gunpoint. There were no other eyewitnesses to the holdup. Upon trial the station attendant was called as a witness for the state and upon direct examination testified, over objection, that at a four man lineup conducted at the police station within two hours of the holdup, without the presence of counsel, which included the defendant, his brother and a third man apprehended with them, "I seen the man that had similar looks to the man that was in the station. * * * I can't say for sure. I'm not making a positive identification, but I'd say the man looked similar to the man that was in the station." The attendant further testified on direct examination, over objection, when James Isaacs was brought into the courtroom, that "he looks similar to the man" (in the lineup). When asked, "can you say whether or not this is the man who was in the station armed with a pistol and with a mask over his head?" he replied, "I can't say for sure. I mean there's so much—the looks are so much alike." The only other testimony by the station attendant as to the identification of James Isaacs as the principal offender was elicited thereafter on cross-examination.

On this state of the record the defendant for his sole assignment of error asserts that the trial court erred by admitting into evidence the lineup and in-court identifications of James Isaacs without making a determination that the in-court identification had an origin independent of the identification made at the lineup.

The crime for which the defendant was indicted and tried occurred after the decisions of the Supreme Court of the United States, on June 12, 1967, in *United States* v. *Wade*, 388 U. S. 218, 87 S. Ct. 1926, and *Gilbert* v. *California*, 388 U. S. 263, 87 S. Ct. 1951 were rendered. See also *Stovall* v. *Denno*, 388 U. S. 293, 87 S. Ct. 1967. The trial proceedings here were thus subject to the holdings of the Supreme Court in the *Wade* case and the *Gilbert* case that a post-indictment lineup is a critical stage of the proceedings at which the Sixth Amendment's right to counsel

applies, that unless a suspect has counsel present or waives this right the evidence that a witness identified the suspect at such a lineup is inadmissible at trial, and that if a lineup is held without counsel or a waiver of counsel the witness's in-court identification is inadmissible unless the prosecution shows that the in-court identification is not the product of the prior unconstitutionally held lineup.

Although some courts have restricted the *Wade* and *Gilbert* rules to post-indictment confrontations, as did the Supreme Court of Illinois in *People* v. *Palmer,* 41 Ill. 2d 571, 244 N. E. 2d 173, the better view, the one most responsive to the reasoning in the *Wade* and *Gilbert* cases, and the view which we adopt here is that the *Wade* and *Gilbert* rules extend to any lineup conducted where the prosecutive process has shifted from the investigatory stage to the accusatory stage and focuses on the accused, except in emergency situations such as in the *Stovall* case, *supra.* Compare, *Rivers* v. *United States,* 400 F. 2d 935; *People* v. *Fowler,* 270 Adv. Cal. App. 2d 717; *People* v. *Martin,* 273 Adv. Cal. App. 2d 724; *State* v. *Singleton,* 253 La. 18, 215 So. 2d 838; *Palmer* v. *State,* 5 Md. App. 691, 249 A. 2d 482; *Thompson* v. *State* (Nev.), 451 P. 2d 704; *State* v. *Wright,* 274 N. C. 84, 161 S. E. 2d 581; *Martinez* v. *State,* 437 S. W. 2d 842 (Tex. Crim. App.); and *State* v. *Hicks* (Wash.), 455 P. 2d 943. The rules would thus apply to most lineups because a suspect is not ordinarily placed in a lineup until, as here, the investigatory process has disclosed his probable implication in the crime.

Although the lineup and the in-court identifications, as testified to here, were not positive identifications, the testimony as to the similarity between James Isaacs and the man identified in the lineup, who was also similar in appearance to the person effecting the holdup, had some probative value in determining whether James Isaacs was the holdup man. It did not exclude him from such identity but tended, at the least, to place James Isaacs within a limited group of persons whose appearance was the same as that of the holdup man and this testimony may have been one of the factors which convinced the jury beyond a rea-

sonable doubt that he was one and the same person as the holdup man. The in-court identification could not stand independently of the taint of the lineup identification for the prosecution did not supply the necessary foundation that the in-court identification was not the product of the prior unconstitutional lineup procedures.

Under these circumstances, had James Isaacs, the alleged principal, been on trial, he could have successfully demanded the exclusion from evidence of the testimony as to both the lineup and the in-court identification.

The issue thus becomes, does an aider and abettor have the same constitutional right to have excluded from evidence a lineup identification of the principal offender and an in-court identification of the principal offender tainted by the lineup identification because of the unconstitutionality of the lineup identification arising from the lack of counsel for the principal at the lineup?

The prosecution has ably argued against the aider and abettor having such right and has cited numerous cases as authority for its position. In our opinion each of these cases is distinguishable.

*Jones* v. *State*, 14 C. C. 363, involves only the question of the sufficiency of an indictment against a person indicted jointly with the defendant and has no bearing on the admissibility of evidence against an aider and abettor which would not have been admissible against his principal.

In *State* v. *Ravenell* (1964), 43 N. J. 171, 203 A. 2d 13, although a headnote to the opinion states that a co-defendant had no standing to attack the voluntariness of an incriminatory out of court statement of the other defendant when the same was confined and received in evidence against the other defendant alone, it appears in the court's opinion that such procedure could not have been prejudicial to the appealing co-defendant because the defendant making the statement also actually testified against the appellant as to all matters in the statement which might have been prejudicial to the appellant.

*State* v. *Cox*, Sup. Ct. of Missouri (1961), 352 S. W.

2d 665, has no relevance to our case for it pertains only to instructions to a jury having reference solely to the other defendant, and has no relation to the admissibility of evidence.

*Hopkins* v. *State* (1968), 5 Md. App. 284, 246 A. 2d 288, also has no relevance for it pertains only to the personal privilege against self-incrimination of an accomplice who testified against the appellant, a privilege which could be, and apparently was, waived by the accomplice. Similarly, here, had James Isaacs chosen to testify against the appellant, Robert Isaacs, his testimony would have been admissible even though it might have tended to incriminate James.

The opinion in *United States* v. *Simmons* (1960), (C. C. A. 2), 281 F. 2d 354, does not support the statement in a headnote that the denial of a co-defendant's motion to have the government produce an agent's notes of a conversation he had with a witness would not give the appellant standing to complain that the denial had prejudiced him, for the court says at page 358:

"* * * No motion was made, however, at this time to have these notes produced; thus defendant cannot now contend that the fact that he did not receive them constitutes reversible error. * * * But the denial of Coppola's motion should not give Simmons standing to complain on this appeal that the denial prejudiced him. And even if Simmons does have such a standing we would have to hold the denial proper * * *."

Nor does the opinion of the court in *People* v. *Cobb* (1964), 52 Ill. App. 2d 332, 202 N. E. 2d 56, support the case's headnote that a party cannot assign for error that which does not affect him although it might be harmful to others not complaining, for in that case there was evidence of identification of the appellant which was independent of the testimony of the identification complained of. With respect to the latter the court said:

"* * * At no time during the trial did the defendant [appellant] object or move to strike the evidence relating to Alvarez's identification of the defendant, as corroborat-

ed by Officer Griffin. Timely objection to hearsay statements must be made at trial and cannot be raised for the first time at the appellate level."

With regard to *Kominski* v. *State* (1959), 154 A. 2d 691 (Del. Sup. Ct.), we have no argument with the proposition cited by the prosecution from the headnotes of that decision, that "objections relating *exclusively to a co-defendant* who was acquitted could not avail the defendant." (Emphasis added.) However, the decision cited is not sufficiently detailed to show any applicability to this case.

*State* v. *Lemon* (1969), 203 Kan. 464, 454 P. 2d 718, was again a case where the person who made the statement of which the appellant complained personally testified against the appellant at the trial, and it was determined on his cross-examination that the statement of which the appellant was deprived could not have been helpful to him. Any conclusion by that court that the defendant cannot assert as error a right which another may have had to counsel at an inquisition proceeding constituted *obiter dictum.*

In *State* v. *Curley* (1970), 171 S. E. 2d 699, the Supreme Court of South Carolina held as to defendant Pearson, charged with safecracking, that testimony that Pearson had made a statement to officers after which he directed them to a power pole at the base of which tools (later connected with the safecracking through the use of expert testimony) were found could not be introduced against Pearson without a determination of voluntariness under *Miranda* v. *Arizona*, 384 U. S. 436, 86 S. Ct. 1602. But the court said: "Of course, Curley (a co-defendant principal) has no standing to complain." This conclusion could rest entirely on the fact that the testimony admitted did not in any way tend to implicate the complaining defendant of the crime for which charged.

*United States* v. *Ballentine* (1969), (C. C. A. 2), 410 F. 2d 375, has no application to our problem for the testimony complained of was given by a witness jointly indicted with and called by the appellant. The court concludes that:

"If appellant had not called Heyward, as his witness the inculpatory out-of-court statement would not have been

admissible. *Bruton* v. *United States, supra* [88 S. Ct. 1620]. Having called him, he cannot now object to the use of his confession for the purpose of impeachment.''

This leaves only one case cited by the prosecution which seems to have an actual bearing on the issue of the standing of an aider and abettor to object to evidence tending to implicate him in a crime and which would not have been admissible against the principal. That is the case of *Burton* v. *State* (1969), (Tex. Ct. of App. Crim.), 442 S. W. 2d 354, which also involves the alleged driver of a getaway car. Although the *Wade* and *Gilbert* lineup cases were held to be inapplicable because the lineup occurred long before those decisions were rendered and those cases may not be applied retrospectively (*Stovall* v. *Denno*, 388 U. S. 293, 87 S. Ct. 1967), the *Burton* case still involves the standing of an aider and abettor to make objection to a lineup identification of his principal when that lineup identification is of such character as to violate the due process standards of fundamental fairness. The Texas Court of Criminal Appeals held simply, on the basis of the United States Constitution's Fourth Amendment search and seizure provisions and those decisions denying standing to a co-defendant, that there is no reason to apply a different rule when a Sixth Amendment right to counsel at a lineup is claimed.

We do not conceive that the problem is quite so simple or that the analogy of the search and seizure cases necessarily pertains under our Ohio law applicable to aiders and abettors and we are compelled to arrive at a different conclusion than that reached by the Texas Court of Criminal Appeals.

Although the courts of various jurisdictions appear to distinguish between aiders and abettors and accessaries with respect to the necessity of proving that the principal is guilty of the crime for which the aider and abettor or accessary is charged, it is implicit, though not necessarily specifically held, in the authoritative case law of Ohio that an aider and abettor, such as the driver of a getaway car, may not be convicted as a principal when separately tried

unless at his trial the actual principal's guilt is proved beyond a reasonable doubt. Thus, the principal's guilt is an element of proof of the aider and abettor's guilt. This does not mean that the principal has to be tried in the same case, or, for that matter, that he must be tried and convicted at all. It merely means that before there can be an aider and abettor to a crime there must be proof that the crime to which the aiding and abetting pertains has been committed.

Although there are no cases in Ohio specifically so holding, it is held where the question has arisen that only evidence which would have been admissible against the principal may be admitted in evidence to prove the principal's guilt on the trial of the aider and abettor or accessary. 22 Corpus Juris Secundum 294, *Criminal Law*, Section 105 b, n. 63, and authorities therein cited. In other words, on the trial of the aider and abettor, in defending the issue of the principal's guilt of the offense for which the aider and abettor is charged (as a principal), the aider and abettor, in effect, steps into the shoes of the principal and may assert any defensive rights which the principal might have asserted had he been on trial. The situation is not that where one accomplice (who in many of the cases cited by the prosecution was a primary actor in committing the crime) seeks to take advantage of a defensive right attributable solely to the actual defense of the other accomplice, but is one where the proof and the defensive right asserted pertain solely to the crime with which the defendant seeking to assert the defensive right is charged.

We are impressed with the similarities between this case and the cases of *Bruton* v. *United States,* 391 U. S. 123, 88 S. Ct. 1620, and *Roberts* v. *Russell*, 392 U. S. 293, 88 S. Ct. 1921. In the *Bruton* case, the Supreme Court held that the admission in a joint trial of a codefendant's confession which implicated the defendant-appellant, where the codefendant did not take the stand for cross-examination by the defendant-appellant, constituted prejudicial error even though the trial court gave clear, concise and understandable instructions that the confession could only be used against the codefendant and must be disregarded

with respect to the defendant-appellant. In the *Roberts* case, the Supreme Court held that the *Bruton* rule must be applied retroactively because to not do so would result in a serious risk in such cases that the issue of guilt or innocence might not be reliably determined. In the instant case the lineup identification of the principal has similarities with a confession made by the principal to the crime with which the aider and abettor is charged. The *Wade* and *Gilbert* cases, *supra*, guarantee the principal the right, when tried, to exclude such identifications, and in-court identifications related to and tainted by the lineup identification, where counsel for the identified principal has not been present to observe the lineup so that the principal may be protected by adequate cross-examination against lineup identifications involving violations of due process of law and so that the issue of guilt or innocence might be reliably determined.

What reasonable justification may there then be for the use of a lineup identification of an alleged principal in the trial of an aider and abettor where such principal did not have counsel to observe the lineup and the alleged aider and abettor neither had counsel to observe the lineup nor was himself present in the lineup so that he would have knowledge of the manner in which it was conducted? We find no reasonable justification to distinguish between the principal and the aider and abettor in the assertion of the principal's right to counsel in a lineup identification. To hold otherwise would permit and approve the conviction of an aider and abettor on evidence which could not be used to convict the offender who actually committed the crime. To hold otherwise would also not only deprive the aider and abettor of the equal protection of the laws, but would deprive him of a meaningful defense and present a serious risk that the issue of his guilt or innocence might not be reliably determined.

We conclude that the admission into evidence of testimony as to both the unconstitutional lineup identification of James Isaacs and the in-court identification of James Isaacs tainted by the unconstitutional lineup identification

constituted error prejudicial to the rights of the defendant Robert Isaacs. In so concluding we do not determine whether such evidence would have been competent had the identified principal had counsel at the lineup and the aider and abettor did not.

For the prejudicial error thus determined the judgment of the trial court must be reversed and the cause be remanded for new trial and further proceedings as provided by law. Due to the decease of the trial judge we cannot and do not make a limited remand as was made in the *Wade* and *Gilbert* cases.

*Judgment reversed.*

COLE, P. J., and YOUNGER, J., concur.