### 19328

The STATE, Respondent, v. Clarence T. EASTERLING, Jr., et al., Appellants

(185 S. E. (2d) 366)

*Messrs. G. M. Howe, Jr., Arthur G. Howe, Marvin I. Oberman, Malcolm M. Crosland,* and *Coming B. Gibbs, Jr.,* of Charleston, *for Appellant,* cite:

*Messrs. Robert B. Wallace, Esq., Sol.* and *A. Arthur Rosenblum, Esq., Asst. Sol.,* of Charleston, *for Respondent,* cite:

December 1, 1971.

LITTLEJOHN, Justice.

All of the eight defendants were charged with possession of marihuana in violation of Section 32-1492.1 of the code, and with conspiracy to possess and use marihuana in violation of Section 16-550 of the code. All were convicted of the possession of marihuana. Defendants Clarence T. Easterling, Jr., and Richard D. Eddings were found guilty in addition of the conspiracy charge. All defendants have appealed the convictions.

Before trial, defendants served a motion for suppression as evidence the marihuana seized by the officers, on the ground that the search and seizure thereof violated both the Constitution of South Carolina and the Constitution of the United States. The constitutional provisions, which are identical, guarantee the right of the people to be secure in their houses against unreasonable searches and seizures. A hearing was held and testimony taken from both the state's witnesses and defense witnesses in the absence of the jury.

At the end of the hearing the trial judge ruled that the evidence was admissible and it was admitted, over objection, in the trial on its merits.

Appellants submit that the trial judge erred in failing and omitting to make an independent finding of facts and circumstances concerning the legality of the search and seizure, and in failing to exclude the evidence. A decision on these issues will be determinative of this appeal.

Whether evidence should be suppressed by a trial judge depends upon the facts, and each case must be decided on the basis of the evidence submitted. In *State v. Curley,* 253 S. C. 513, 171 S. E. (2d) 699 (1970) we held that the legality of a search and seizure, as well as admissibility of the evidence, was solely a question for the judge. It is not a question for the jury. A review of the facts and circumstances leading up to the seizure of the marihuana involved is necessary.

At approximately 1:45 on Sunday morning, November 30, 1969, an unidentified person phoned the desk sergeant at the Charleston police department and reported a disorderly party being held at 45 Laurens Street in Charleston. The caller refused to give his name, but said that if Detective Powell (of the narcotic squad) was on duty the party might be of interest to him.

The sergeant contacted Detective Powell, and he, along with Special Agent Jaeger, Inspector Hodge and Detective Botchie, proceeded to 45 Laurens Street. The evidence is susceptible of the inference that music of a possibly disturbing nature was emanating from the apartment of defendant Easterling. The four officers ascended a stairway to the apartment, with Powell and Jaeger in front. At the door of the apartment Agent Jaeger knocked; a voice inside inquired "who is it' and Jaeger replied "Clarence", which is the first name of the defendant Easterling. Easterling opened the door. The four officers entered and found a substance called hashish, a form of marihuana, in a tinfoil plate, on the

floor in the middle of a circle formed by at least a portion of the defendants.

It is the contention of the State that when the door was opened Detective Powell saw and recognized the substance in the tinfoil plate as hashish. If the evidence warrants the conclusion that Officer Powell saw the hashish before he entered the door of the apartment, the trial judge was warranted in finding that the evidence was properly seized and was admissible under the plain view doctrine. It is generally held that if evidence is in plain view so as to obviate the necessity of a search, illegal substances such as marihuana may be seized without a search warrant.

"Our holding is consistent with *Harris v. United States,* 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. (2d) 1067 (1968). The articles of clothing were 'in the plain view of an officer who [had] a right to be in the position to have that view [and they ]are subject to seizure and may be introduced in evidence' *Id.* at 236, 88 S. Ct. at 993. Search implies invasion and guest, and the constitutional prohibitions do not prohibit a seizure without a warrant where there is no need of a search. *State v. Morris,* 243 S. C. 225, 113 S. E. (2d) 744 (1963)." *State v. Daniels,* 252 S. C. 591, 167 S. E. (2d) 621 (1969).

If, on the other hand, the hashish was not seen until after an illegal entry, such was not subject to seizure and should have been excluded from evidence. The legality of the entry hinges on whether the officer saw the marihuana from outside the door where he had a right to be.

At the motion-to-suppress hearing, held in the absence of the jury, the State presented two witnesses, Sgt. Fairfull (who received the anonymous telephone call), and Detective Powell. The defendants submitted the testimony of Special Agent Jaeger, of Professor Gadsden and of defendants Margaret Schachte, Donna Jean Martin and Clarence T. Easterling, Jr. Sgt. Fairfull testified relative to receiving the telephone call and conveying the message to the officers who proceeded to the apartment.

The officers did not have a search warrant and admitted that a search for marihuana between the hours of 12 midnight and 6 A. M. at that time was not authorized by law. It is further conceded that facts were not available to the officers at the time which would have supported an application for a search warrant.

Assuming that the report of the disorderly party and the music alleged to have been heard outside the apartment was sufficient to warrant some investigation, it did not justify a forceful entry of the apartment. The officers were not invited into the apartment. The testimony of Detective Powell, upon which the State relies to prove legal seizure, taken as a whole does not warrant the conclusion that the marihuana was seen prior to the entry.

One question and answer of Detective Powell, if considered alone, might support the inference that he saw the marihuana from outside the door. He testified:

"Q. Now, when the door opened what, if anything did you see in the interior?

"A. When the door opened there was a group of seven sitting in a circle. Like this is the door, to my left about where you are at. In the middle of this circle was a large plate of tinfoil with hashish in it."

Other testimony, however, by Detective Powell and Special Agent Jaeger and the defendants, forces the conclusion that the State's showing does not prove a legal entry and a legal seizure. Detective Powell testified further as follows:

"Q. All right, sir, when you got upstairs what, if anything, was done and by whom?

"A. I believe that Mr. Jaeger knocked on the door and somebody said 'who is it?' and I think Mr. Jaeger said 'Clarence' and Clarence Easterling opened the door. I had my badge in my hand and I said 'police officers' and we stepped in.

\* \* \*

"Q. When you were in the door?

"A. When the door opened and I stepped inside, I saw the stuff and I determined it was hashish.

"Q. The door opened and you stepped inside?

"A. Yes, sir.

"Q. And after you put your foot inside you made a determination it was hashish?

"A. Well, I was looking inside as I was going in, too.

"Q. The crucial question right now I am asking you is when did you make the determination that this hashish?

"A. As I was going through the door.

"Q. After your foot got in?

"A. As I was going through the door."

Special Agent Jaeger, who knocked on the door and was apparently the first to enter, testified as follows:

"Q. And did he open the door?

"A. Yes, sir, he did.

"Q. And what happened then?

"A. He opened the door and from the door opening the apartment was lit and I observed several people sitting down in the apartment. I didn't get too clear a view because of the position in which he was standing.

"Q. He was in the door, wasn't he?

"A. Yes, sir.

"Q. And what happened then?

"A. He looked for a minute and then he started closing the door and I sort of put my hand out because I was pretty close up to the door and I put my hand out and the door gave way and there was a little step there and I stumbled.

"Q. So you stumbled on in?

"A. Yes, sir.

"Q. Isn't that correct?

"A. Yes, sir

"Q. And you were the first one in?

"A. I presume so. I was the first one flying in.

"Q. That's right. And you didn't see any hashish until you got in?

"A. No, sir. I regained my balance right quick and at that time I looked and there was one agent already in and another—it looked like one of the others were in there. I don't know which two they were.

\* \* \*

"Q. So, actually, you say you pushed the door?

"A. No, sir. I was standing right up to it when the door opened and I sort of moved forward a little bit and there was actually no conversation between myself and Clarence and he started closing the door and I sort of put my hand up and I guess I expected some pressure or something and there wasn't any.

"Q. The door flew back?

"A. The door flew back and I sort of—the step was there and I didn't realize it and I stumbled."

The defendants, Margaret Schachte, Donna Jean Martin, and Clarence T. Easterling, Jr., testified in essence that Easterling cracked the door to see who was outside and that the door was then pushed open from the outside and one of the officers stumbled in. This is not inconsistent with the testimony of Special Agent Jaeger. Neither Inspector Hodge nor Detective Botchie testified at the suppression hearing.

The constitutional validity of the seizure in this case must depend upon the constitutional legality of the entry into the apartment. Whether the entry was legal depends in turn upon whether the officers or either of them saw illegal marihuana from a point outside the door where they had a right to be. From a review of the entire evidence, including that quoted above, we are forced to the opinion that the only reasonable inference from the evidence is that the marihuana was not seen until entry of the apartment had been made by at least one of the police officers. This being true the plain view doctrine does not apply and is of no comfort to the State's position. The burden of proving legal entry was upon the State, and this burden of proof has not been met.

Exclusion of the evidence was required by rulings of the Supreme Court of the United States. In *State v. Curley, supra,* we said:

"We have recognized our obligation to follow the decision of the Supreme Court of the United States in *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684 [6 L. Ed. (2d) 1081] (1961), by which the Fourth Amendment was held applicable to the states and, with it, the federal doctrine forbidding the admission of evidence obtained by an unreasonable search and seizure. *State v. Hamilton,* 251 S. C. 1, 159 S. E. (2d) 607 (1968)."

*Mapp* holds that the due process clause of the fourteenth amendment of the United States Constitution embodies, and makes enforceable in state courts, the rights guaranteed by the fourth amendment to the Constitution of the United States, and further makes evidence obtained by police officers in violation of the fourth amendment inadmissible.

We agree that the lower court should have made specific findings on all issues relative to the admissibility of the evidence. The ruling of the judge was as follows:

"Correct, sir, but we are talking now of plain view and you said an illegal, forceful entry. I have to deny your motion to suppress. I have to construe all of the evidence and I can't rule as a matter of law that it was a forceful or illegal entry."

The finding and ruling was general. In evidentiary hearings of this kind facts are normally in dispute. Failure to spell out factual findings as a basis for a ruling on the question of admissibility makes appellate review difficult, if not impossible. The rulings of this court in *State v. Cannon,* 248 S. C. 506, 151 S. E. (2d) 752 (1966), *State v. Cannon,* 250 S. C. 437, 158 S. E. (2d) 357 (1967), and *State v. Hamilton,* 251 S. C. 1, 159 S. E. (2d) 607 (1968), which cases involved confessions, are of interest.

Had the evidence been excluded it is apparent that the judge should have directed a verdict. Since there is no con-

tention on the part of the State that there is other sufficient evidence to support a conviction, the judgment of the lower court is reversed and the cause remanded for entry of a judgment of acquittal.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.