528 S.E.2d 696

**The STATE, Appellant,**

v.

**Naim JIHAD, Respondent.**

**No. 3124.**

Court of Appeals of South Carolina.

Heard Dec. 7, 1999.
Decided Feb. 22, 2000.
Rehearing Denied May 13, 2000.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor George M. Ducworth, of Anderson, for appellant.

Kenneth W. Sheppard, of Atlanta, Ga.; and Nancy Jo Thomason, of Anderson, for respondent.

STILWELL, Judge:

An Anderson County grand jury indicted Naim Jihad for trafficking in marijuana. The trial court granted Jihad's motion to suppress the drug evidence due to an illegal traffic stop by the arresting officer. The State appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

On December 3, 1997, a highway patrol officer stopped Jihad on Interstate 85 when he observed that the right brake/tail light on Jihad's 1971 vehicle was not operating. The officer gave Jihad a verbal warning and initially intended to allow him to proceed. However, the officer determined that

Jihad was acting in an odd manner and noticed several suspicious indicators. Specifically, the officer noticed an overwhelming odor of Downy fabric softener emanating from the vehicle, along with the presence of a number of brand new air fresheners. Additionally, the officer saw a pile of dirty clothes in the back seat, which he found inconsistent with the smell of Downy.

Jihad refused the officer's request to search the vehicle. The officer, however, based on the reasons stated above, summoned a K–9 unit. When the search dog alerted to the passenger side of the vehicle, the officer searched the car and found a black travel bag containing approximately fifteen pounds of marijuana. The officer arrested Jihad and an Anderson County grand jury indicted him for trafficking.

On June 10, 1998, the court held a pretrial hearing on the admissibility of the drug evidence. Jihad argued the evidence was inadmissible under the exclusionary rule for two reasons: (1) the stop leading to the search was itself illegal, and (2) the officer did not have probable cause to search the vehicle. After brief arguments, the trial court granted Jihad's motion to suppress based solely on the lack of probable cause for the stop. The State appeals this ruling.

## LAW/ANALYSIS

Evidence obtained as a result of an unreasonable search or seizure is inadmissible. *See State v. Easterling,* 257 S.C. 239, 185 S.E.2d 366 (1971) (citing *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). An officer's decision to stop a vehicle generally is reasonable if he has probable cause to believe a traffic violation has occurred. *See State v. Smith,* 329 S.C. 550, 495 S.E.2d 798 (Ct.App.1998) (citing *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)), *cert. dismissed as improvidently granted,* 335 S.C. 550, 518 S.E.2d 821, *and cert. denied,* —— U.S. ——, 120 S.Ct. 619, 145 L.Ed.2d 513 (1999). Here, it is undisputed that Jihad's right brake light was not working when the officer pulled him over. The State argues that because Jihad's vehicle featured two "stop lamps," the statutory provisions regarding vehicle safety mandate that *both* lamps be "maintained in good working order." We disagree.

As an initial matter, an understanding of the various vehicle lamp requirements and the purpose or purposes they serve is essential. To comply with South Carolina law, a motor vehicle driven in this state must be equipped with at least one rear-mounted tail lamp which emits a red light visible from 500 feet. S.C.Code Ann. § 56–5–4510 (1991). Similarly, head lamps are required on the front of all vehicles, at least one for motorcycles and motor-driven cycles and at least two for all other motor vehicles. S.C.Code Ann. § 56–5–4490 (1991). Both tail lights and headlights must be illuminated "from a half hour after sunset to a half hour before sunrise" and during periods of inclement weather or adverse environmental conditions. S.C.Code Ann. § 56–5–4450 (1991). Signal lamps or devices, on the other hand, are activated only in particular situations, *i.e.*, when the driver intends to signal other motorists, either in front or behind, of some impending maneuver. Accordingly, both brake lights and turn signals are encompassed in the phrase "signal lamps and signal devices." *See* S.C.Code Ann. § 56–5–4730 (1991).

A rear-mounted stop lamp, or brake light, is a signal lamp which emits a red or yellow light actuated "upon application of the service (foot) brake," which "may but need not be incorporated with a tail lamp[.]" S.C.Code Ann. § 56–5–4730(1) (1991). A stop lamp, therefore, indicates a vehicle is slowing down or possibly coming to a complete stop. A turn signal is a lamp or mechanical signal device "capable of clearly indicating any intention to turn either to the right or to the left" which "shall be visible both from the front and rear" of the vehicle. S.C.Code Ann. § 56–5–4730(2) (1991). All signal lamps and devices must be visible from a distance of 100 feet. S.C.Code Ann. § 56–5–4730 (1991).

In this case, the officer initially stopped Jihad for a broken right brake/tail light. Though these terms are technically distinct, both appear in the record and are used interchangeably by the parties. However, both the State and Jihad agreed below that § 56–5–4560 governing stop lamps is the applicable statute. We therefore focus on the statutory scheme concerning stop, or brake, lights.[1]

---

1. In any event, the outcome is the same. Section 56–5–4510 of the Code requires "at least one tail lamp" on every motor vehicle.

There is no doubt that at least one stop lamp or brake light is required on all new motor vehicles sold or driven in this state after July 1, 1949:

> From and after July 1, 1949 it shall be unlawful for any person to sell any new motor vehicle, including any motorcycle or motor-driven cycle, in this State or for any person to drive such vehicle on the highways unless it is equipped with a *stop lamp* meeting the requirements of § 56–5–4730.

S.C.Code Ann. § 56–5–4560 (1991) (emphasis added). Section 56–5–4730 reads, in relevant part:

> Any motor vehicle may be equipped, and when required under this chapter shall be equipped, with the following signal lamps and devices:
>
> (1) A *stop lamp* on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake and which may but need not be incorporated with a tail lamp; and
>
> (2) A lamp or lamps or mechanical signal device capable of clearly indicating any intention to turn either to the right or to the left and which shall be visible both from the front and rear.
>
> A *stop lamp* shall be plainly visible and understandable from a distance of one hundred feet to the rear both during normal sunlight and at nighttime and a *signal lamp* or lamps indicating intention to turn shall be visible and understandable during daytime and nighttime from a distance of one hundred feet both to the front and rear. When a vehicle is equipped with a *stop lamp* or other signal lamps, *such lamp* or lamps shall at all times be maintained in good working condition. . . .

S.C.Code Ann. § 56–5–4730 (1991) (emphasis added). Despite the repeated statutory references to a singular stop *lamp*, however, the State contends that such a reading leads to an "unwarranted and absurd result." We disagree.

---

S.C.Code Ann. § 56–5–4510 (1991). Since we conclude that only one functioning brake light is also required, the distinction is immaterial because the light on only one side of Jihad's vehicle, the right rear side, was not illuminated.

■ When the language of a statute is "plain and unambiguous, and conveys a clear and definite meaning," there is no need to employ rules of statutory construction, and this court "has no right to look for or impose another meaning." *City of Columbia v. American Civil Liberties Union*, 323 S.C. 384, 387, 475 S.E.2d 747, 749 (1996). "This Court cannot construe a statute without regard to its plain and ordinary meaning, and may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope." *Id.* at 388, 475 S.E.2d at 749.

■ Here, the statutory terms are clear. At no point in the text of either statute regulating vehicle brake lights is the term stop lamp pluralized. To the contrary, both §§ 56–5–4560 and 56–5–4730 employ the singular stop *lamp*. This court simply cannot ignore such patent and definite statutory language in order to force a construction not intended by the legislature. *See Whitner v. State*, 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) (explaining "where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself."), *cert. denied*, 523 U.S. 1145, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998). The plain language of the statutes indicates a legislative desire to require that every motor vehicle have at least one functioning stop lamp or brake light.[2] Indeed the State itself admits as much, stating in its brief that § 56–5–4730 "merely sets forth the *minimum* requirements for 'signal lamps and signal devices'" employed on a motor vehicle. (Emphasis in original.)

This view also is supported by a review of § 56–5–4490, which mandates head lamps on all motor vehicles. There, the statute explicitly states that each vehicle "shall be equipped *with at least two* head lamps," at least one of which shall be "on each side of the front of the motor vehicle." S.C.Code

---

**2.** Neither statutory heading, "Stop lamps required on motor vehicles," or "Signal lamps and signal devices," is inconsistent with this reading. Moreover, because they are not part of the statute itself, such headings are irrelevant in statutory construction. *See* S.C.Code Ann. § 2–13–175 (Supp.1999) ("The catch line heading or caption which immediately follows the section number of any section of the Code of Laws must not be deemed to be part of the section and must not be used to construe the section more broadly or narrowly than the text of the section would indicate . . . .").

Ann. § 56–5–4490 (1991) (emphasis added). We agree with Jihad that if the legislature had intended to require more than one working stop lamp, it would have expressly stated its intention in the statutory language of §§ 56–5–4560 and 56–5–4730, as it so clearly did in § 56–5–4490. Moreover, we believe our interpretation best comports with the rule that statutory language must be construed in the light of the intended purpose of the statute. *See Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995); *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994). As noted earlier, a stop lamp or brake light serves as a signal to other drivers that a vehicle is either slowing down or stopping, and this purpose is fulfilled when just one such light is engaged.

The State argues further, however, that the trial court's decision "fails to give full effect to the apparent intent of the Legislature in regulating the safe operating condition of vehicles traveling on South Carolina's public highways." Specifically, the State asserts §§ 56–5–4410 and 56–5–5310, in conjunction with the latter part of § 56–5–4730, evidence a legislative purpose to secure the public's safety.[3] According to the State, therefore, the trial court's ruling "creates an entire class of equipment that may be legally used on a vehicle in an unsafe or defective condition, simply because the equipment is in excess of the Motor Vehicle Code's minimum requirements." In our view, this analysis simply begs the question. There is no doubt these statutes apply to

---

3. Section 56–5–4410 reads in relevant part:

> It shall be unlawful for any person to drive ... on any highway any vehicle ... which is in such an unsafe condition as to endanger any person or property or which does not contain those parts or is not at all times equipped with lights, brakes, steering and other equipment in proper condition....

S.C.Code Ann. § 56–5–4410 (1991).

> Section § 56–5–5310 similarly states:

> No person shall drive or move on any highway any vehicle unless the equipment thereon is in good working order ... and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person....

S.C.Code Ann. § 56–5–5310 (1991).

As the State did not argue § 56–5–5310 below, it is not preserved for appellate review. *See State v. Conyers,* 326 S.C. 263, 487 S.E.2d 181 (1997).

regulate the operating condition of those equipment features which the law requires. Nothing in the language employed, however, suggests an intent to regulate extraneous mechanical features not deemed mandatory by the legislature. We thoroughly agree with the State that highway safety is an important public good. We also agree that the "foremost method of enforcing traffic and vehicle safety regulations ... is acting upon observed *violations.*" *Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (emphasis added).

■ There is no dispute that Jihad's vehicle had at least one brake light (on the left side) in good working condition at the time the officer effected the stop. Because we find the statutory scheme mandates only one functioning "stop lamp," in this instance Jihad's vehicle was in full compliance with all statutory requirements regarding rear vehicle lights. Since neither Jihad's driving nor his vehicle transgressed any traffic law, the patrolman's stop was unreasonable. *Cf. Sikes v. State,* 323 S.C. 28, 448 S.E.2d 560 (1994) (explaining that an officer must have a reasonable suspicion of criminal activity to stop a car). The marijuana, as fruit of the poisonous tree, is therefore inadmissable. *See State v. Copeland,* 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality.") (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

Accordingly, the trial court's decision to suppress the marijuana is

**AFFIRMED.**

CONNOR, J., concurs.

ANDERSON, J., dissents in separate opinion.